UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

MAR 17 2026

RECEIVED

# UNITED STATES COURT OF APPEALS
# FOR THE THIRTEENTH CIRCUIT

Kurt Kanam
Petitioner,
v.
 The Office of The President of the United States
The Office of Jeanine Pirro us attorney for the district of Columbia
Respondents

## PETITION FOR REVIEW

March 5, 2026

Pursuant to 28 U.S. Code § 2347 and Rule 15(a) of the Federal Rules of Appellate Procedure, Kurt Kanam (herein "Petitioner"), hereby petitions the United States Court of Appeals for the Thirteenth Circuit. for review of an Order of February 27, 2026 order of Cynthia Taub made on behalf of The President of the United States and supervised by The Office of Jeanine Pirro us attorney for the district of Columbia(herein "Respondents") in the matter styled Kurt Kanam v The President of the United States, The Office of Jeanine Pirro us attorney for the district of Columbia

This Court has jurisdiction in this matter pursuant to The Office of The President of the United States "Decision and Order" final order of February 27, 2026 made by Cynthia Taub

In the February 27, 2026 order of Cynthia Taub, Cynthia Taub upheld the ongoing insubordination of the President's executive order Federal Recognition of the Lumbee Tribe of North Carolina Published

Document: 2025-02124 (90 FR 8653) by Benton Peterson Saifuddin.Kalolwala Johny Walker, Brain Hudack and John Trung

In the February 27, 2026 order of Cynthia Taub, Cynthia Taub stipulated that Ms Cynthia Taub March 27, 2026 order is not actually an administrative order and as her own unpublished opinion is therefore not required to quote a Federal Register Publication Per 5 USC 552

5 USC 552 (e)

Except to the extent that a person has actual and timely notice of the  terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the  Federal Register and not so published. For the purpose of this  paragraph, matter reasonably available to the class of persons affected  thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

Because  Cynthia Taub failed to cite an adversarial federal register publication invalidating the President's executive order Federal Recognition of the Lumbee Tribe of North Carolina Published Document: 2025-02124 (90 FR 8653)  Cynthia Taubis insubordinate to 5 USC 552 (e) and the President's executive order Federal Recognition of the Lumbee Tribe of North Carolina Published Document: 2025-02124 (90 FR 8653)

Cynthia Taub further is insubordinate to local rule 7 N (1)

7 (n) MOTIONS INVOLVING JUDICIAL REVIEW OF ADMINISTRATIVE AGENCY ACTIONS.
(1) In cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the

administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first. Thereafter, counsel shall provide the Court with an appendix containing copies of those portions of the administrative record that are cited or otherwise relied upon in any memorandum in support of or in opposition to any dispositive motion. Counsel shall not burden the appendix with excess material from the administrative record that does not relate to the issues raised in the motion or opposition. Unless so requested by the Court, the entire administrative record shall not be filed with the Court

No certified list of the contents of the administrative record have EVER been filed with the court in any of the mentioned motions to dismiss.

Without a certified list of the contents of the administrative record the adversarial statements made by Cynthia Taub, Benton Peterson Saifuddin.Kalolwala Johny Walker Brain Hudack and John Trung in their motion to dismiss meet the definition of perjury.

902. 1996 Amendments to 18 U.S.C. § 1001

The False Statements Accountability Act of 1996 (FSAA), Pub. L. No. 104-292, H.R. 3166 (October 11, 1996), made several changes that affect the work of United States Attorneys' Offices, including revisions to 18 U.S.C. §§ 1001, 1505, 6005, and 28 U.S.C. 1365. This section describes the changes to section 1001.

Section 2 of the FSAA revises section 1001 of title 18, United States Code. The new 18 U.S.C. § 1001, effective October 11, 1996, reads as follows:

a. Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully --

1. falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

2. makes any materially false, fictitious, or fraudulent statement or representation; or

3. makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title or imprisoned not more than 5 years, or both.

Cynthia Taub, Benton Peterson Saifuddin.Kalolwala Johny Walker Brain Hudack and John Trung have made motion to dismiss that are insubordinate of local rule 7 N (1), 5 USC 552 (e) and the President's executive order Federal Recognition of the Lumbee Tribe of North Carolina Published Document: 2025-02124 (90 FR 8653)

By failing to uphold The Presidential memorandum Federal Recognition of the Lumbee Tribe of North Carolina, 90 Fed. Reg. 9434 (February 12, 2025) and local rule 7 N (1) and 5 USC 552 (a) and (e) Assistant US Attorneys Brian Hudack, John Trung, Benton Peterson and Saifuddin. Kalolwala have made false and insubordinate administrative orders there by perjuring their oaths of office and also terminating their employment contracts per Executive Order 14171 section 3 (b)

Section 3

"(b) Employees in or applicants for Schedule Policy/Career positions are not required to personally or politically support the current President or the policies of the current administration. They are required to faithfully implement administration policies to the best of their ability, consistent with their constitutional

oath and the vesting of executive authority solely in the President. Failure to do so is grounds for dismissal."

In the February 27, 2026 order of Cynthia Taub, Cynthia Taub stipulated that Ms Cynthia Taub, Benton Peterson Saifuddin.Kalolwala Johny Walker Brain Hudack and John Trung are openly insubordinate to The Presidential memorandum Federal Recognition of the Lumbee Tribe of North Carolina, 90 Fed. Reg. 9434 (February 12, 2025) and local rule 7 N (1) and 5 USC 552 (a) and (e) and in violation of Executive Order 14171 section 3 (b) and are ONLY subject to be dismissed the respondents.

If John Trung Benton Peterson Saifuddin.Kalolwala Johny Walker Brain Hudack and Cynthia Taub are allowed to remain employed to further disregard and insubordinate court rules, Acts of Congress and Published Presidential memorandums then all court rules Acts of Congress and Presidential memorandums and the office of President. are/is meaningless and unenforceable.

It is this petitioner opinion that The Office of The President of the United States and The Office of Jeanine Pirro us attorney for the district of Columbia has a duty to his/her Oath of Office and the American People to take action to dismiss John Trung  Benton Peterson Saifuddin.Kalolwala Johny Walker Brain Hudack and Cynthia Taub to prevent anarchy and tyranny and the destruction of the American rule of law.

Without the enforcement of Executive Order 14171 the American people are subject to the Cynthia Taub Doctrine where the perjured insubordinate unpublished personal opinion of Cynthia Taub is the supreme law.

It is for the above reasons that,

Petitioner respectfully prays that this Court review and void The Office of The President of the United States "Decision and Order" final order of February 27, 2026 made by Cynthia Taub

This Court declare That

By failing to uphold The Presidential memorandum Federal Recognition of the Lumbee Tribe of North Carolina, 90 Fed. Reg. 9434 (February 12, 2025) and local rule 7 N (1) and 5 USC 552 (a) and (e) Cynthia Taub, Brian Hudack, John Trung, Benton Peterson Johnny Walker and Saifuddin. Kalolwala have made false and insubordinate administrative statements and orders in open insurrection and insubordination of the office of the President, thereby perjuring their oaths of office and terminating their employment contracts per Executive Order 14171 section 3 (b)

and, order that Respondent repay petitioners his filling fee

and, order that by failing to comply with The Presidential memorandum Federal Recognition of the Lumbee Tribe of North Carolina, 90 Fed. Reg. 9434 (February 12, 2025) and local rule 7 N (1) and 5 USC 552 (a) and (e) Cynthia Taub, Brian Hudack, John Trung, Benton Peterson Johnny Walker and Saifuddin. Kalolwala are in contempt of this court and have violated the The False Statements Accountability Act of 1996 (FSAA), Pub. L. No. 104-292, H.R. 3166 (October 11, 1996) That this court terminates Cynthia Taub, Brian Hudack, John Trung, Benton Peterson Johnny Walker and Saifuddin. Kalolwala bar licenses and employment contracts.

Kurt Kanam
2103 Harrison #143
Olympia WA 98502

6

Attachments

The President of the United States "Decision and Order" final order of February 27, 2026 made by  Cynthia Taub

Motion to Dismiss filed by and Assistant US Attorneys Brian Hudack, John Trung, Benton Peterson and Saifuddin. Kalolwala

Petition for reprimand

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

MAR 17 2026

RECEIVED

UNITED STATES COURT OF APPEALS
FOR THE THIRTEENTH CIRCUIT

Kurt Kanam
Petitioner,

v.

The Office of The President of the United States
The Office of Jeanine Pirro us attorney for the district of Columbia
Respondents

## STIPULATED ORDER FOR SANCTIONS IN THE FORM OF SUMMARY JUDGMANT

March 5, 2026

The Petitioner come now and makes a supplemental stipulated order for sanctions in the form of summery judgment based on the following.

The respondent has stipulated that the respondent's motion to dismiss is not an administrative order as defined by,

## 5 U.S. Code § 551

**(6)** "order" means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of     an agency in a matter other than rule making but including licensing;

(13) "agency action" includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act; and

and

## 5 U.S. Code § 702

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. "

By Stipulating that respondents motions to dismiss are not administrative orders the respondent further stipulated that respondent's motions to dismiss are not supported by any agency record as required by per

## 5 U.S.C. § 504

"Whether or not the position of the agency was substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication"

Respondents stipulation that no agency record exists further stipulates that this court must hold unlawful and set aside agency action

Per **5 U.S. Code § 706**

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law,

interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

**(1)** compel agency action unlawfully withheld or unreasonably delayed; and

**(2)** hold unlawful and set aside agency action, findings, and conclusions found to be—

**(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

**(B)** contrary to constitutional right, power, privilege, or   immunity;

© in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

**(D)** without observance of procedure required by law;

**(E)** unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

**(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review  the whole record or those parts of it cited by a party, and due  account shall be taken of the rule of prejudicial error.

The respondent has stipulated that by willfully failing to comply with Local rule 7 N 1 the respondent is in contempt of this court as must be sanctioned accordingly by striking respondents motion to dismiss and granting summary judgment to the petitioner petition.

# Criminal Resource Manual

## CRM 752. General Definition of Contempt

Contempt of court is an act of disobedience or disrespect towards the judicial branch of the government, or an interference with its orderly process. It is an offense against a court of justice or a person to whom the judicial functions of the sovereignty have been delegated.

The power of a federal court to punish a contempt of its authority is limited by Title 18, United States Code, Section 401 to:

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

(n) MOTIONS INVOLVING JUDICIAL REVIEW OF ADMINISTRATIVE AGENCY ACTIONS.
(1) In cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first. Thereafter, counsel shall provide the Court with an appendix containing copies of those portions of the administrative record that are cited or otherwise relied upon in any memorandum in support of or in opposition to any dispositive motion. Counsel shall not burden the appendix with excess material from the administrative record that does not relate to the issues raised in the motion or opposition. Unless so requested by the Court, the entire
administrative record shall not be filed with the Court.

By failing to cite an adversarial Federal Register Publication number in the administrative order presently under review as required by 5

USC 552 (e) the respondent is stipulating that no administrative record exists or can exist to support the administrative order presently under review.

> (E) each amendment, revision, or repeal of the foregoing. Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

It is for the above reasons that this court must grant the stipulated order for summary judgment. for summary judgment.

Kurt Kanam  03/04/26

NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 26-1009

UNITED STATES COURT OF APPEALS FOR
THE DISTRICT OF COLUMBIA CIRCUIT

KURT KANAM,
*Petitioner*,
v.
UNITED STATES DEPARTMENT OF JUSTICE, et al.,
*Respondents*.

**FEDERAL RESPONDENTS' MOTION TO DISMISS THE
PETITION FOR REVIEW
AND STAY THE FILING OF THE RECORD INDEX**

Petitioner Kurt Kanam brings this petition for review related to his ongoing efforts to force the federal government to recognize the "Pilchuck Nation" as an Indian tribe. Kanam petitions the Court to "review and set aside the Decision and Order of December 12, 2025 of The Office of [Assistant United States Attorney] Johnny Walker." Pet. 2.[1] The December 12, 2025 filing referenced in the petition and attached thereto is not a decision or order, but is instead the United States' Motion to Dismiss regarding three of Kanam's earlier petitions to this Court.

---

[1] The petition also names Brian P. Hudak for his role in "supervising" the December 12, 2025 Motion to Dismiss, but Mr. Hudak is no longer with the Department of Justice.

This Court lacks jurisdiction over Kanam's latest petition. Rule 15(a) of the Federal Rules of Appellate Procedure prescribes the procedure for review in "a court of appeals authorized to review the agency order." There is no jurisdiction in this Court (or any other court) because the "decision" the petition purports to challenge— a motion to dismiss—is not an "order" at all, and certainly not a final order of the United States Attorney's Office. And even if there were an "agency order" at issue, Kanam has cited no authority for direct review in this Court. The petition should be dismissed.

## BACKGROUND

The instant petition is the latest in a long history of efforts by Kanam to force federal recognition of the "Pilchuck Nation" as an Indian tribe. A summary of the past and pending litigation is provided in the United States' Motion to Dismiss attached to the petition.

Of primary relevance here, Kanam filed three petitions for review with this Court in 2025. *Kanam v. Sec'y of Interior,* No. 25-1186 (D.C. Cir. Sept. 9, 2025); *Kanam v. Sec'y of Interior,* No. 25-1200 (D.C. Cir. Oct. 4, 2025); *Kanam v. Dept of Justice, et al* No. 25-1201 (D.C. Cir. Oct. 14, 2025). In the first, Kanam sought review of a brief that the government filed in opposition to his post-appeal Rule 60 motion in

- 2 -

*Kanam v. Haaland*, No. 22-cv-3183 (D.D.C.). Pet. at 2–3, No. 25-1186.[2] Kanam's second petition sought review of "inaction" on the part of the Secretary of the Interior in response to Kanam's 2014 request for the Department of Interior to "include the Pilchuck Nation in the list of Federally recognized tribes[.]" Pet. at 1–2, No. 25-1200. Kanam's third petition for review was directed at the Federal Bureau of Investigation ("FBI"), purporting to challenge the FBI's lack of a response to Kanam's demand that the Pilchuck Nation receive access to the National Crime Information Center and training at the FBI's office in Tacoma, Washington. See generally Pet., No. 25-1201.

The United States filed a motion to dismiss in all three cases on December 12, 2025, and the motion remains pending. Kanam has now filed the instant petition asking the Court to "review and set aside" the United States' December 12, 2025 Motion to Dismiss. Pet. 2.

## ARGUMENT

### I.   The Court Lacks Jurisdiction over the Petition.

This Court lacks jurisdiction over Kanam's petition for review.

---

[2] Kanam also "appealed" the United States' opposition brief to the Court of Appeals for the Federal Circuit. On December 10, 2025, that court dismissed the appeal for lack of jurisdiction, concluding that Kanam had "failed to show this court has jurisdiction or that transfer to another court would be appropriate." Order, *Kanam v. Burgum*, No. 2026-1010 (Fed. Cir. Dec. 10, 2025).

Kanam invokes Rule 15(a) of the Federal Rules of Appellate Procedure, but that provision prescribes the procedure for review in "a court of appeals authorized to review the agency order." The "decision" Kanam purports to challenge is not reviewable by this Court. Even if this Court could directly review a "final order" of the United States Attorney's Office, that is not a plausible characterization of the document Petitioner purports to challenge here. What Kanam seeks review of here is a motion to dismiss filed by the United States in separate proceedings before this Court, not an "agency order."

Further, "[p]etitions for review of agency action may not be pursued in the court of appeals in the first instance unless a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action." *Delta Construction Co. v. EPA*, 783 F.3d 1291, 1298 (D.C. Cir. 2015). Petitioner has identified no such statute here. Thus, even if there were an "agency order" at issue, Kanam has cited no authority for direct review in this Court.

The petition seeks declaratory relief "per the Administrative Procedures Act," citing the Freedom of Information Act (FOIA) provisions at 5 U.S.C. § 552. Pet. at 2. But a FOIA action must be brought first in district court. See 552(a)(4)(B) ("the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding

- 4 -

agency records and to order the production of any agency records improperly withheld from the complainant").[3] There is no basis for direct review in this Court under FOIA, or under the APA more broadly. See *Rodriguez v. Penrod*, 857 F.3d 902, 906 (D.C. Cir. 2017) ("unless Congress expressly says otherwise, APA review takes place first in the federal district courts, not the courts of appeals").

The petition also cites Executive Order 14219, "Ensuring Lawful Governance and Implementing the President's 'Department of Government Efficiency' Deregulatory Initiative" (Feb. 19, 2025); and Executive Order 14171, "Restoring Accountability to Policy-Influencing Positions Within the Federal Workforce" (Jan. 20, 2025). But neither Executive Order is judicially enforceable, as they both contain the following limitation:

> This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

Exec. Order 14171, Section 7(c); Exec. Order 14219, Section 9(c). This language demonstrates that "[t]he President did not undertake to create any role for the judiciary in the implementation of this policy." *Manhattan-Bronx Postal Union v.*

---

[3] Petitioner apparently challenges the United States' failure to produce an administrative record in the other petition cases pending before this Court. But the government had requested that the deadline to produce an administrative record be stayed until after the motion to dismiss was decided, as no record would be needed if the petitions were dismissed for lack of jurisdiction.

*Gronouski*, 350 F.2d 451, 456 (D.C. Cir. 1965). "Such orders simply serve as presidential directives to agency officials to consider certain policies …. They do not create free-standing private rights to enforce such policies." *California v. EPA*, 72 F.4th 308, 318 (D.C. Cir. 2023); see also *Meyer v. Bush*, 981 F.2d 1288, 1296 n.8 (D.C. Cir. 1993) (compliance with executive order that states it "created no private rights" is not subject to judicial review). Executive Orders 14219 and 14171 thus do not authorize enforcement by any court, much less direct review in this Court.

In sum, there is no statute that would authorize direct review in this Court of a motion to dismiss filed in a separate proceeding. And if the pleading Kanam purports to challenge is reviewable at all—which it is not—that review must be sought in the district court. *International Brotherhood of Teamsters v. Pena*, 17 F.3d 1478, 1481 (D.C. Cir. 1994) ("[u]nless a statute provides otherwise, persons seeking review of agency action go first to district court rather than to a court of appeals").

Accordingly, the petition for review should be dismissed for lack of jurisdiction.

## II. The Court Should Stay the Filing of the Index of the Record.

This Court should stay the government's filing of the index of the administrative record pending resolution of this motion to dismiss. The government's threshold jurisdictional argument does not require reference to the

administrative record. If the motion is granted, there will be no need for the Court to consider, or for the government to compile, any administrative record.

We note that Kanam filed a "tacitly unopposed" motion for summary judgment requesting that the Court "strike any motion to dismiss filed in this case" without a certified list of the contents of the administrative record. Doc. 2157613 (Jan. 30, 2026). As discussed above, there is no need to compile any administrative record while the government's motion to dismiss is pending, as such an effort would be moot if the case is dismissed on jurisdictional grounds. Also, because the "agency order" at issue in the petition is the government's motion to dismiss filed in other cases before this Court, there is no "administrative record" to be compiled in this case. The motion for summary judgment should be denied, or made moot by the granting of this motion to dismiss.

## CONCLUSION

For the foregoing reasons, the petition for review should be dismissed for lack of jurisdiction.

Adam R.F. Gustafson
*Principal Deputy Assistant Attorney General*

s/ *Cynthia Taub*
Cynthia Taub
*Attorney*
Environment and Natural Resources
Division
U.S. Department of Justice

- 7 -

- 8 -

Post Office Box 7415
Washington, D.C. 20044
(202) 598-5695
Cynthia.taub@usdoj.gov

*Attorneys for the United States of America*

February 27, 2026
90-13-9-18109

## CERTIFICATE OF COMPLIANCE

The foregoing complies with Federal Rule of Appellate Procedure 27(d), in that it contains 1665 words, is in fourteen-point font, and utilizes Times New Roman typeface.

_/s/ Cynthia Taub_
Cynthia Taub

## CERTIFICATE OF SERVICE

Today, February 27, 2026, the foregoing was served on the Petitioner by mailing it to the following address:

Kurt Kanam
2103 Harrison Avenue, NW Apt.
143
Olympia, WA 98502

_/s/ Cynthia Taub_
Cynthia Taub

ORAL ARGUMENT NOT SCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

MAR 17 2026

RECEIVED

| | |
|---|---|
| KURT KANAM,<br><br>Petitioner,<br><br>v.<br><br>SECRETARY OF THE INTERIOR,<br><br>Respondent. | No. 25-1186 |
| KURT KANAM,<br><br>Petitioner,<br><br>v.<br><br>DEPARTMENT OF THE INTERIOR,<br><br>Respondent. | No. 25-1200 |
| KURT KANAM,<br><br>Petitioner,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>Respondent. | No. 25-1201 |

## MOTION TO DISMISS THE PETITIONS FOR REVIEW
## AND TO STAY THE FILING OF THE RECORD INDEXES

Petitioner Kurt Kanam brings three petitions for review related to

his ongoing efforts to force the federal government to recognize the

"Pilchuck Nation" as an Indian tribe.[1] As basis for this Court's

jurisdiction, each petition invokes 29 U.S.C. § 160(f). That provision

allows a petition for direct review in this Court by a person aggrieved by

a final order of the National Labor Relations Board. But Kanam's three

petitions have nothing to do with the National Labor Relations Board,

and he identifies no other source of jurisdiction for direct review in this

Court. His petitions should therefore be dismissed.

## BACKGROUND

The three instant petitions are the latest in a long history of efforts

by Kanam to force federal recognition of the Pilchuck Nation as an Indian

tribe.

## I.    Legal Background

The Department of the Interior has broad authority over the

"management of all Indian Affairs and of all matters arising out of Indian

relations," 25 U.S.C. § 2, including the "power of recognition of Indian

tribes," *Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 211 n.1 (D.C.

Cir. 2013). The Department has long-standing regulations—referred to

---

[1]    Kanam's petitions have not been consolidated. But given the overlapping legal issues and to promote efficiency, the government is filing duplicates of this motion in each of the three unconsolidated cases.

- 2 -

as "Part 83"—establishing the process for federal recognition. 43 Fed. Reg. 39,361 (Sept. 5, 1978) (codified as amended at 25 C.F.R. §§ 83.1–83.62).

The Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454, title I, 108 Stat. 4791 (1994) ("List Act"), requires the Secretary of the Interior to annually "publish in the Federal Register a list of all Indian tribes which the Secretary recognizes to be eligible for special programs and services provided by the United States to Indians because of their status as Indians," 25 U.S.C. § 5131(a). Congress included findings in the Act stating that tribes "presently may be recognized by Act of Congress; by administrative procedures set forth in part 83 of the Code of Federal Regulations . . . ; or by a decision of a United States court[.]" Pub. L. No. 103-454, § 103(3), 108 Stat. at 4791.

For over a decade, Kanam has sought inclusion of what he calls the "Pilchuck Nation" on the list of federally recognized tribes. In 2012, the Native Village of Karluk, Alaska[2] purported to appoint an organization controlled by Kanam—the Native American Justice Project—as the

---

[2]    Karluk is an Alaska Native Village Statistical Area with a population of 27 as of the 2020 Census. *See* https://perma.cc/2MTY-SVK4.

"Karluk Tribal Court." *Kanam v. Haaland*, No. 22-5197, 2023 WL 3063526, at *1 (D.C. Cir. Apr. 25, 2023). The "Karluk Tribal Court" then issued a two-page judgment declaring the Pilchuck Nation to have been a party to the 1859 Treaty of Point Elliott between the United States and several Indian tribes, *id.*, though the treaty contains no reference to any "Pilchuck" people or representative, 12 Stat. 927 (1859). Kanam then mailed that judgment to the United States District Court for the Western District of Washington, which stamped it received and opened a miscellaneous docket associated with it—but took no further action. *See Kanam v. All Active Parties of U.S. vs. Washington*, No. 3:12-mc-5019 (W.D. Wash. filed Apr. 16, 2012).

## II.  Prior Litigation

### A.  Kanam's First Suit in This District

In 2021, Kanam filed a lawsuit in the United States District Court for the District of Columbia. *Kanam v. Haaland*, No. 21-cv-1690, 2022 WL 2315552 (D.D.C. June 28, 2022).[3] He claimed that he had twice sent

---

[3]  Kanam had filed an earlier lawsuit in 2018, but the court dismissed it after Kanam failed to respond to the government's motion to dismiss. Order, *Kanam v. Zinke*, No. 18-cv-1760-TNM (D.D.C. Dec. 12, 2018), ECF No. 14.

- 4 -

the Karluk Tribal Court order to the Department of the Interior, but it refused to include the Pilchuck Nation on the list of federally recognized tribes. *Id.* at *1–2. Kanam claimed this to be a violation of the Administrative Procedure Act and the Fifth Amendment's guarantee of due process. *Id.* at *2.

The district court granted the government's motion to dismiss, concluding that Kanam and the Pilchuck Nation had failed to exhaust the administrative process set forth in Part 83. *Kanam*, 2022 WL 2315552, at *3–4. The district court recognized that this Court has held that "when a court is asked to decide whether a group claiming to be a currently recognized tribe is entitled to be treated as such, the court should for prudential reasons refrain from deciding that question until the Department has received and evaluated a petition under Part 83." *Id.* at *4 (quoting *Mackinac Tribe v. Jewell*, 829 F.3d 754, 757 (D.C. Cir. 2016)). The district court rejected Kanam's argument that the Karluk Tribal Court judgment exempted him from having to pursue the Part 83 process. It noted that the Karluk Tribal Court "lacks any authority" to recognize an Indian tribe; that, even it were it otherwise, the Karluk Tribal Court's order would not be binding on the Secretary of the Interior;

- 5 -

and that the Karluk Tribal Court could not override this Court's precedent requiring resort to the Part 83 process before seeking judicial review. *Id.* at *4–5. The district court also rejected Kanam's attempt to amend his complaint to allege that the Karluk Tribal Court's order had been "registered" by the United States District Court for the Western District of Washington.

Kanam appealed, and this Court affirmed. It held that Kanam's failure to pursue the Part 83 process for federal recognition "dooms this lawsuit." *Kanam*, 2023 WL 3063526, at *1 (citing *Mackinac Tribe*, 829 F.3d at 757). It rejected Kanam's argument that the Karluk Tribal Court judgment compelled a different result. Kanam relied on the congressional finding in the List Act that "Indian tribes presently may be recognized by Act of Congress; by the administrative procedures set forth in" part 83; "or by a decision of a United States court." Pub. L. No. 103–454, § 103(3), 108 Stat. at 4791. But the Court concluded that the Karluk Tribal Court was not a "United States court," and the Western District of Washington—to which Kanam had sent the Karluk Tribal Court judgment—did not itself "adjudicate the status of the Pilchuck Nation or act on the tribal court judgment in any way." *Kanam*, 2023 WL 3063526,

- 6 -

at *1. In any event, the Court held that Kanam failed to show how congressional findings about means of recognizing tribes "could impose any mandatory duty on Interior." *Id.* This Court denied Kanam's petition for rehearing en banc. 2023 WL 4275622 (D.C. Cir. June 23, 2023).

Kanam then returned to the district court and filed a motion invoking Federal Rule of Civil Procedure 60(b), which the district court denied, finding that the arguments were already raised or could have been raised previously. Min. Order, *Kanam*, No. 21-cv-1690 (D.D.C. Dec. 4, 2023). Kanam appealed again, and this Court summarily affirmed, concluding that Kanam presented no basis for relief under Rule 60. *Kanam v. Haaland*, No. 24-5003, 2024 WL 1693620, at *1 (D.C. Cir. Apr. 18, 2024). Kanam petitioned for certiorari, which was denied. *Kanam v. Burgum*, No. 24-1217, 2025 WL 2823786 (Oct. 6, 2025).

## B.    Kanam's Second Suit in This District

While Kanam's appeal in the first suit was pending in this Court, he filed a new lawsuit seeking a "writ of mandamus to require the U.S. Department of the Interior to list the Pilchuck Nation as a federal recognized tribe." Compl. at 2, *Kanam v. Haaland*, No. 22-cv-3183 (D.D.C. Nov. 3, 2022), ECF No. 3. He again asserted that the judgment

issued by the Karluk Tribal Court and the purported "registrat[ion]" of that judgment in the Western District of Washington compelled the Department of the Interior to list the Pilchuck Nation as a federally recognized tribe. *Id.* at 9–10.

The district court granted the government's motion to dismiss, holding that Kanam was not entitled to a writ of mandamus because this Court had rejected Kanam's earlier "nearly identical" lawsuit. *Kanam v. Haaland*, No. 22-cv-3183, 2024 WL 1923687, at *1–2 (D.D.C. Mar. 21, 2024).

Kanam again appealed, and this Court summarily affirmed, noting that it had "previously concluded" that tribes must pursue the Part 83 process to gain federal recognition and that the judgment of the Karluk Tribal Court and Kanam's filing of that judgment in the Western District of Washington did not compel the Department of the Interior to recognize the Pilchuck Nation. *Kanam v. Haaland*, No. 24-5121, 2024 WL 4248463, at *1 (D.C. Cir. Sept. 18, 2024), *cert. denied sub nom. Kanam v. Burgum*, 145 S. Ct. 2734 (2025), *reh'g denied*, No. 24-1019, 2025 WL 2550830 (U.S. Sept. 5, 2025).

- 8 -

On August 4, 2025, Kanam filed a motion for relief from judgment in the district court, which the government opposed. *See* Mot. for Relief from J., *Kanam*, No. 22-cv-3183 (D.D.C. Aug. 4, 2025), ECF No. 31. That motion is awaiting the district court's decision.

## III. Kanam's Instant Petitions for Review

Kanam has three pending petitions for review. In the first, he claims to be aggrieved by a brief that the government filed in opposition to his post-appeal Rule 60 motion in *Kanam v. Haaland*, No. 22-cv-3183 (D.D.C.). *See* Pet. at 2–3, *Kanam v. Sec'y of Interior*, No. 25-1186 (D.C. Cir. Sept. 9, 2025). Kanam's Rule 60 motion was based on a Presidential memorandum that directed the Secretary of the Interior to develop a plan "to assist the Lumbee Tribe in obtaining full Federal recognition," which plan must "include consideration and analysis of each potential legal pathway to effectuate the full Federal recognition of the Lumbee Tribe, including through an act of Congress, judicial action, or the Procedures for Federal Acknowledgement of Indian Tribes set forth in 25 C.F.R. part 83." *Presidential Memorandum; Lumbee Tribe of North Carolina*, 90 Fed. Reg. 9,434, 9,435 (Feb. 12, 2025). Kanam argued that the reference to "judicial action" as a means of potential federal recognition means that

- 9 -

the Karluk Tribal Court judgment compels the Department of the Interior to recognize the Pilchuck Nation. Mot. for Relief from J. at 2–3, 10–11, *Kanam*, No. 22-cv-3183 (D.D.C. Aug. 4, 2025), ECF No. 31. The government opposed, arguing that the Presidential memorandum "is unrelated to Plaintiffs' case, does not create any legal duty to recognize Plaintiffs' tribe, and does not alter the statutory framework that governed this Court's dismissal and the D.C. Circuit's affirmance." Opp'n to Mot. for Relief from J. at 1, 5–7, *Kanam*, No. 22-cv-3183 (D.D.C. Aug. 13, 2025), ECF No. 32. As noted above, the district court has yet to decide the motion.[4]

Kanam's second petition seeks review of "inaction" on the part of the Secretary of the Interior in response to Kanam's 2014 request for the Department to "take notice" of the Karluk Tribal Court's judgment and "include the Pilchuck Nation in the list of Federally recognized tribes[.]" Pet. at 1–2 & Ex. A at ECF page 10. As the multiple ECF stamps on this

---

[4]    Kanam also "appealed" the government's opposition brief to the United States Court of Appeals for the Federal Circuit. On December 10, 2025, that court dismissed the appeal for lack of jurisdiction, concluding that Kanam had "failed to show this court has jurisdiction or that transfer to another court would be appropriate". Order, *Kanam v. Burgam*, No. 2026-1010 (Fed. Cir. Dec. 10, 2025).

document indicate, that 2014 request was presented to the district court in Kanam's first suit in this district: *Kanam v. Haaland*, No. 21-cv-1690 (D.D.C.).

Kanam's third petition for review is directed at the Federal Bureau of Investigation ("FBI"). It purports to challenge the FBI's lack of a response to Kanam's demand that the Pilchuck Nation receive access to the National Crime Information Center and training at the FBI's office in Tacoma, Washington.[5]

In each of the three petitions for review, Kanam cites 29 U.S.C. § 160(f) as the basis for this Court's jurisdiction; and, in the latter two petitions, he also cites 25 C.F.R. § 2.600. Pet. at 1, *Kanam*, No. 25-1186 (D.C. Cir. Sept. 9, 2025); Pet. at 1, *Kanam*, No. 25-1200 (D.C. Cir. Oct. 4, 2025); Pet. at 1, *Kanam*, No. 25-1201 (D.C. Cir. Oct. 14, 2025).

---

[5]    Kanam previously brought a similar "petition for review" purporting to challenge a "final order" by the Federal Bureau of Investigation declining to allow the Pilchuck Tribe access to the National Criminal Information Center. Kanam voluntarily dismissed that petition after the government moved to dismiss. Stip., *Pilchuck Nation v. FBI*, No. 23-1303 (D.C. Cir. Dec. 28, 2023).

## ARGUMENT

### I.    The Court Lacks Jurisdiction over the Petitions for Review.

This Court lacks jurisdiction over each of Kanam's three petitions for review. "Unless a statute provides otherwise, persons seeking review of agency action go first to district court rather than to a court of appeals." *Int'l Bhd. of Teamsters v. Pena*, 17 F.3d 1478, 1481 (D.C. Cir. 1994). "Petitions for review of agency action may not be pursued in the court of appeals in the first instance unless a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action." *Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1298 (D.C. Cir. 2015).

There is no statute permitting the direct review sought in Kanam's petitions. The petitions cite 29 U.S.C. § 160(f), but that provision concerns review of decisions issued by the National Labor Relations Board, not the Department of the Interior or the FBI. Two of the petitions also make reference to 25 C.F.R. § 2.600, but the "appeals" referred to in that regulation are those seeking "administrative review," 25 C.F.R. § 2.101, not judicial review. And the regulation makes not reference to this Court. Finally, the petitions invoke the Administrative Procedure Act ("APA"), but "unless Congress expressly says otherwise, APA review

- 12 -

takes place first in the federal district courts, not the courts of appeals."

*Rodriguez v. Penrod*, 857 F.3d 902, 906 (D.C. Cir. 2017).

For these reasons, the Court lacks jurisdiction over the petitions for review, and they should be dismissed. The lack of jurisdiction is also grounds to deny Kanam's motion for summary reversal in *Kanam v. Department of Justice*, No. 25-1201 (D.C. Cir.) (Doc. #2140837).

## II.     The Court Should Stay the Filing of the Index of the Record.

This Court should stay the government's filing of the index of the administrative records pending resolution of this motion to dismiss. The government's threshold jurisdictional argument does not require reference to the administrative record. In the event the motion is granted, there will be no need for the Court to consider, or for the government to compile, any administrative record. If this motion is denied, the government respectfully requests fourteen days from the date of such denial to file the index to the record.

\*     \*     \*

- 13 -

## CONCLUSION

For the foregoing reasons, the petitions for review in Case Nos. 25-1186, 25-1200, and 25-1201 should be dismissed for lack of jurisdiction.

JEANINE FERRIS PIRRO
United States Attorney

*/s/ Johnny Walker*

JOHNNY H. WALKER, III
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2511
johnny.walker@usdoj.gov

*Attorneys for the United States of America*

- 14 -

## CERTIFICATE OF COMPLIANCE

The foregoing complies with Federal Rule of Appellate Procedure 27(d), in that it contains 2,499 words, is in fourteen-point font, and utilizes Century Schoolbook typeface.

_/s/ Johnny Walker_
JOHNNY H. WALKER, III
Assistant United States Attorney

## CERTIFICATE OF SERVICE

Today, December 12, 2025, the foregoing was served on the appellant by mailing it to the following address:

Kurt Kanam
2103 Harrison Avenue, NW
Apt. 143
Olympia, WA 98502

_/s/ Johnny Walker_
JOHNNY H. WALKER, III
Assistant United States Attorney

April 21, 2025

Attorney General Pam Bondi
U.S. Department of Justice
950 Pennsylvania Ave. NW.
Washington DC 20530-0001

Solicitor General John Sauer
Office of the Solicitor General
950 Pennsylvania Ave. NW
Washington DC 20530-0001

Office of Professional Responsibility
950 Pennsylvania Avenue, N.W. Rm 3266
Washington, DC 20530

Secretary Doug Burgum
U.S. Department of the Interior
1849 C Street, N.W.
Washington DC 20240

RE: FORMAL ADMINISTRATIVE COMPLAINT/ REQUEST FOR
REPRIMAND:

Hello,

My name is Kurt Kanam, and I am writing to report that unlawful regulations are
being enforced by the Bureau of Indian Affairs (BIA) and U.S. Department of
Justice. (US.DOJ.)

The unlawful regulation took place after my request for publication to include the
Pilchuck Nation on the list of federally recognized tribes, after the US.DOJ failed to
timely appeal the orders by the Karluk tribal court or the U.S. District Court for the
Western District of Washington. In objecting to that request to honor judicial Federal
tribal recognition and in the subsequent litigation, the BIA has made conflicting
statements regarding Federal tribal recognition methods under the List Act.

On January 16, 2019, in the case titled *Koi Nation of N. Cal. v. U.S. Dep't of the
Interior*, 361 F.Supp.3d 14 (D.D.C 2019), Chief Judge Beryl A. Howell ruled there
were three methods of Federal tribal recognition.[1] It was clear that Chief Judge Beryl
A. Howell, still recognized Federal tribal recognition by the Judiciary branch and
stated the language was codified, despite Mr. Peterson's assertions they were not..

ATTACHMENT 1

---

[1] See *Koi Nation of N. Cal. v. U.S. Dep't of the Interior*, 361F.Supp.3d 14 (D.D.C
2019) "As noted, a congressional finding accompanying the List Act describes
three avenues for inclusion on the list of federally recognized tribes, id. § 5130."

However, on October 21, 2021, U.S. DOJ Attorney Benton Peterson argued the following:

> Consistent with Congress's express endorsement of Part 83 in the List Act's findings, Pub. L. No. 103-454, § 103(3), Interior has chosen to require groups seeking federal recognition to proceed through Part 83, and as discussed in Interior's Motion to Dismiss, Interior has no affirmative duty to consider Plaintiffs' request outside of that context. Defs.' Mot. 17–19.

In his argument, U.S.DOJ Attorney Benton Peterson claimed this removal of judiciary branch tribal recognition took place in the ("2015 Guidance"), 80 Fed. Reg. 37,538 (July 1,2015). On July 1, 2015, the agency also published its Final Rule, declining to adopt the provision it had originally proposed. *See generally* 80 Fed. Reg. 37862–95. In that rulemaking, the BIA stated there were "no substantive changes to the methods of tribal recognition. Two Court cases echoed that BIA statement in their rulings. *Chinook Indian Nation v. U.S. Department of Interior*, 2020 WL 363410 (W.D. Wash. 2020), and *Burt Lake Band of Ottawa and Chippewa Indians v. Bernhardt*, No. 17-0038, 2020 WL1451566 (D.D.C., March 25, 2020).

ATTACHMENT 2

In the two court cases to seek Federal tribal recognition, Kanam argued the removal of judiciary branch tribal recognition, was unlawful because it was in contempt of Congress. The U.S. District Court for the District of Columbia and the Circuit Court for the district of Columbia ultimately teamed with the BIA administrative fiat and developed a "Circuit precedent" removing judiciary branch tribal recognition. Kanam also argued the Agency and Mr. Peterson failed to follow chapter 5 in the *Handbook on Compiling Administrative Records for Informal Rulemaking*.

ATTACHMENT 3

On July 8, 2023, I obtained an email from Elizabeth Appel, Director, Office of Regulatory Affairs & Collaborative Action – Indian Affairs, the BIA official conducting the agency guidance and rulemaking in 2015. In that email, Elizabeth Appell stated that Judiciary branch tribal recognition was not addressed in the "guidance" development.

ATTACHMENT 4

However, even after the Email from Elizabeth Appel was obtained, Mr. Peterson of the U.S.DOJ continued to falsely assert that judiciary branch tribal recognition had been removed by the 2015 guidelines. The Circuit Court upheld the district court ruling and the case is waiting for a U.S. Supreme Court ruling on whether a review would be accepted. No. 24-1019. I filed a Rules of Professional Conduct complaint with the U.S.DOJ on Jun 22, 2023. I filed a new RPC complaint on Mar 25, 2025.

ATTACHMENT 5

Then, on January 23, 2025, the President of the United States issued a Presidential memorandum (PM) to the Secretary of the Interior (Secretary) titled "Federal Recognition of the Lumbee Tribe of North Carolina," which directed the Secretary to review "all applicable authorities regarding the recognition or acknowledgement of Indian tribes" and, in consultation with the leadership of the Lumbee Tribe of North Carolina, "submit to the President a plan to assist the Lumbee Tribe in obtaining full Federal recognition through legislation or other available mechanisms. Specifically, the Memoranda stated"

> (b) The plan shall include consideration and analysis of each potential legal pathway to effectuate full Federal recognition of the Lumbee Tribe, including through an act of the Congress, **judicial action**, or the Procedures for Federal Acknowledgement of Indian Tribes set forth in 25 C.F.R. Part 83.

ATTACHMENT 6

As shown above, judiciary branch tribal recognition was never removed as a pathway for Federal tribal recognition in 2015 or otherwise. If it had been properly removed, President Trump would not have included judicial action in his memoranda. The U.S. DOJ Attorney Benton Peterson was disingenuous about the removal of judiciary branch Federal tribal recognition from the List Act.

Recently, I contacted Mr. Peterson regarding any opposition to a planned motion to vacate under Rule 60, based on the President's new memorandums. Despite the President's memoranda, on March 25, 2025, Mr. Peterson still maintains the BIA "express policy" remains unchanged as shown below:

Thank you. The Presidential Memorandum does not change the law or the position of the agency. The defendant therefore opposes the proposed motion and requests that plaintiff refrain from filing a motion that would be frivolous.

ATTACHMENT 7

Therefore, pursuant to the April 9, 2025, Memorandum from President Trump the unlawful regulation being imposed by U.S. DOJ Attorney Benton J. Peterson should be declared unlawful.

ATTACHMENT 8

However, repeal is not necessary, because the unlawful regulation never existed in the first place.

Wherefore, I am asking for reprimands for U.S. DOJ Attorney Benton J. Peterson, and any supervising attorney associated in *Kanam/Pilchuck v. BIA* et al. No. 21-cv-01690, 22-5197 *Kanam v. Halland* 24-5121, and 24-5003.

I am also asking for the return of all my legal fees to defend against an unlawful and fictitious BIA regulation.

Thank you

Kurt Kanam, Self-Represented
2103 Harrison # 143
Olympia WA. 98502

# ATTACHMENT 1

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

MAR 17 2026

RECEIVED

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE KOI NATION OF NORTHERN CALIFORNIA, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, <br><br> Defendants. | Civil Action No. 17-1718 (BAH) <br><br> Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

The federal government's treatment of the plaintiff, the Koi Nation of Northern California ("Koi Nation"), a landless federally recognized Indian tribe, has been marked by decades of mistreatment, including terminating and selling the tribe's reservation in 1956 and denying the tribe the special programs and services provided only to those tribes with federally recognized status. Finally, in 2000, after persistent efforts by the Koi Nation, the defendant, the United States Department of the Interior ("DOI"), acknowledged the "egregious" administrative mistake and reaffirmed the Koi Nation's status as a federally recognized tribe, without requiring the tribe to undergo a formal regulatory process to obtain the same result. In a stark example of the government giving with one hand and taking away with the other, DOI's correction of its own long-standing error is now being used by DOI as the basis to deny the Koi Nation's eligibility for an exception to a statutory prohibition on gaming on Indian land, set out in the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 *et seq.*, the law that "prescribes the conditions under which Indian tribes may engage in commercial gaming on their reservations," *City of Roseville v. Norton*, 348 F.3d 1020, 1021 (D.C. Cir. 2003).

1

Dockets.Justia.com

The Koi Nation initiated this lawsuit to challenge DOI's decision, on January 19, 2017, to deny the tribe's eligibility for the IGRA exception, known as the "restored lands exception," 25 U.S.C. § 2719(b)(1)(B)(iii), as violative of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, IGRA, and the Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 5101 *et seq. See* Compl. ¶¶ 10, 82–124, ECF No. 1. Pending before the Court are the parties' cross-motions for summary judgment. *See* Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 14; Defs.' Cross-Mot. Summ. J. ("Defs.' Cross-Mot."), ECF No. 15. For the reasons explained below, the Koi Nation's motion is granted, and the defendants' motion is denied.

## I.    BACKGROUND

The Koi Nation, known until a name change in 2012 as the "Lower Lake Rancheria," is a landless, federally recognized Indian tribe headquartered in Santa Rosa, California. Administrative Record ("AR") at 1, 3, 4 (Decision Letter (Jan. 19, 2017) ("DOI 2017 Decision") at 1, 3, 4); AR at 326 n.1 (Letter from Koi Nation to DOI's Assistant Secretary of Indian Affairs (Apr. 28, 2014) ("Koi 2014 Request Letter") at 1 n.1).[1] Starting in approximately 1956, the United States improperly ignored and mistakenly treated as terminated the Koi Nation's status as a federally recognized tribe. AR at 3–4 (DOI 2017 Decision at 3–4). The Koi Nation has been without a land base or reservation since that time. AR at 3 (DOI 2017 Decision at 3).

After decades of improperly denying the Koi Nation's status as a federally recognized tribe, DOI "sought to correct its error," AR at 4 (DOI 2017 Decision at 4), and, on December 29, 2000, DOI's Assistant Secretary of Indian Affairs reaffirmed the tribe's status as a federally

---

[1]    The AR totals over 500 pages. *See generally* AR. The portions of the AR cited or otherwise relied upon in the parties' briefing have been docketed in a four-part Joint Appendix, *see* J.A., ECF Nos. 21-1–21-4, but the full AR has also been submitted to the Court, *see* Min. Order (Dec. 17, 2018) (directing submission of full AR). For clarity, AR citations are to the AR, rather than the Joint Appendix. The portions of the full AR not cited herein have been reviewed in resolving the pending motions.

recognized tribe, *id.*; *see also* AR at 291 (Letter from DOI's Assistant Secretary of Indian Affairs Kevin Gover to Daniel Beltran, Chairman, Lower Lake Rancheria (Dec. 29, 2000) ("DOI 2000 Recognition Letter")); AR at 293 (Memorandum from DOI's Assistant Secretary of Indian Affairs Kevin Gover to Bureau of Indian Affairs ("BIA") Regional Directors of Pacific and Alaska Regions (Dec. 29, 2000) ("DOI 2000 Recognition Memo") at 4). After reaffirmation in 2000 of the tribe's status, however, the tribe has not generated the revenues necessary to acquire lands in California. *See* Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") at 5, ECF No. 14-1; *see also, e.g.*, AR at 500–01 (Letter from Koi Nation to DOI's Secretary (Mar. 29, 2006) ("Koi Mar. 29, 2006 Request Letter") at 1–2). As a result, for almost fifteen years, the Koi Nation has sought to improve the economic viability of the tribe by conducting gaming activities under IGRA and, as a first step in this process, requesting from DOI on at least three occasions, in 2006, 2009 and 2014, a determination that the tribe qualifies for the restored lands exception, under which certain gaming is permitted on lands taken into trust as part of "the restoration of lands for an Indian tribe that is restored to Federal recognition." 25 U.S.C. § 2719(b)(1)(B)(iii); *see also* AR at 500–01 (Koi Mar. 29, 2006 Request Letter at 1–2); AR at 492 (Koi Nation's 2009 Request to DOI for Restored Tribe Determination (Oct. 7, 2009) ("Koi 2009 Request") at 1); AR at 326 (Koi 2014 Request Letter at 1).

The Koi Nation finally received a response to the tribe's multiple requests for a determination on January 19, 2017, when DOI issued the decision challenged in this lawsuit, concluding that the tribe is not eligible to game on lands under IGRA's restored lands exception, in reliance on DOI's implementing regulation, codified at 25 C.F.R. § 292.10. AR at 1–2 (DOI 2017 Decision at 1–2). The Koi Nation now challenges the validity of DOI's 2017 Decision, *id.*, and the subsection of the regulation, 25 C.F.R. § 292.10(b), on which that agency decision relies.

3

The Koi Nation's claims involve a complex statutory and administrative framework, as well as a lengthy history of interactions between DOI and the tribe. This context is summarized below.

**A.    STATUTORY AND REGULATORY FRAMEWORK**

The parties' dispute over DOI's 2017 Decision implicates several statutes, including IGRA, the IRA, and the Federally Recognized Indian Tribe List Act of 1994 ("List Act"), and various implementing regulations, all of which are reviewed below.

**1.    The Indian Gaming Regulatory Act (IGRA)**

IGRA, 25 U.S.C. §§ 2701 *et seq.*, was enacted in 1988 "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments," *id.* § 2702(1), and, at the same time, "to shield [Indian tribes] from organized crime and other corrupting influences, to ensure that the Indian tribe is the primary beneficiary of the gaming operation, and to assure that gaming is conducted fairly and honestly by both the operator and players," *id.* § 2702(2). To these ends, IGRA established the National Indian Gaming Commission ("NIGC"), with certain enumerated powers and responsibilities. *Id.* §§ 2704–2706.

IGRA provides that Indian tribes may conduct "Class II" and "Class III" gaming activities only on eligible "Indian lands." *Id.* §§ 2710(b)(1), (d)(1). Section 20(a) of IGRA, *id.* § 2719(a), specifically makes ineligible for such activities "Indian land taken into trust by the Secretary after IGRA's effective date, October 17, 1988, unless the land borders an existing reservation or is within the last recognized reservation of a tribe that was landless at the time IGRA was enacted (unless the tribe is in Oklahoma, in which case lands bordering its former reservation are exempted as well)," *City of Roseville*, 348 F.3d at 1024 (summarizing 25 U.S.C. § 2719(a)).

4

This gaming prohibition in § 20(a) is subject to two categories of exceptions in § 20(b) ("Section 20 exceptions"). "The first, § 20(b)(1)(A), allows the Secretary of the Interior to override § 20(a) and permit gaming on a newly acquired parcel when, 'after consultation with the Indian tribe and appropriate State and local officials' the Secretary 'determines that a gaming establishment . . . would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State . . . concurs . . . .'" *Id.* (quoting 25 U.S.C. § 2719(b)(1)(A)). Alternatively, "[t]he second, § 20(b)(1)(B), exempts lands taken into trust as part of the 'settlement of a land claim,' 'the initial reservation of an Indian tribe acknowledged by the Secretary,'" *id.* (quoting 25 U.S.C. §§ 2719(b)(1)(B)(i), (b)(1)(B)(ii)), or, as relevant here, "the 'restoration of lands for an Indian tribe that is restored to federal recognition,'" *id.* (quoting 25 U.S.C. § 2719(b)(1)(B)(iii)). This final exception, known as the "restored lands" exception, *see* 25 C.F.R. § 292.7, "helps ensure 'that tribes lacking reservations when [the statute] was enacted are not disadvantaged relative to more established ones,'" *Butte Cty. v. Chaudhuri* ("*Chaudhuri*"), 887 F.3d 501, 503 (D.C. Cir. 2018) (quoting *City of Roseville*, 348 F.3d at 1030).

### 2.    Relevant IGRA Implementing Regulations, 25 C.F.R. Part 292

In 2008, DOI promulgated regulations, at 25 C.F.R. § 292, to "implement section 2719 of IGRA by articulating standards that the Department will follow in interpreting the various exceptions" to IGRA's general prohibition on gaming on after-acquired lands. Final Rule, Gaming on Trust Lands Acquired After October 17, 1988, 73 Fed. Reg. 29354, 29354 (May 20, 2008) ("Section 20 Final Rule"); *see also* 25 C.F.R. § 292.1 ("This part contains procedures that the Department of the Interior will use to determine whether [IGRA's Section 20] exceptions apply."). The Part 292 regulations included implementation of IGRA's restored lands exception.

5

*See* 25 C.F.R. §§ 292.7–292.12 (providing DOI's procedures for implementing the restored lands exception).

Qualification for the restored lands exception involves a multi-part analysis, focusing on whether a tribe is one that is "restored to Federal recognition," and whether newly acquired lands on which that tribe seeks to conduct gaming are "restored" lands. *See* 25 C.F.R. § 292.7. Under 25 C.F.R. § 292.7, a tribe must meet four conditions to qualify for the restored lands exception: (1) "[t]he tribe at one time was federally recognized, as evidenced by its meeting the criteria in § 292.8," *id.* § 292.7(a); (2) "[t]he tribe at some later time lost its government-to-government relationship by one of the means specified in § 292.9," *id.* § 292.7(b); (3) "[a]t a time after the tribe lost its government-to-government relationship, the tribe was restored to Federal recognition by one of the means specified in § 292.10," *id.* § 292.7(c); and (4) "[t]he newly acquired lands meet the criteria of 'restored lands' in § 292.11," *id.* § 292.7(d). The defendants do not address or otherwise dispute that the Koi Nation meets the first and second conditions, and the fourth condition is not yet met because the tribe remains landless.[2] Thus, the only disputed regulatory condition at issue here is whether the Koi Nation "was restored to Federal recognition" through one of three means specified in 25 C.F.R. § 292.10. *Id.* § 292.7(c).

---

[2] Indeed, the first two requirements appear met. As to the first requirement, showing that the tribe was at one time federally recognized may be met if the "United States at one time acquired land for the tribe's benefit," or with "other evidence" demonstrating "the existence of a government-to-government relationship between the tribe and the United States." 25 C.F.R. § 292.8. The defendants concede that the United States acquired land for the Koi Nation's benefit in 1916, *see* AR at 2 (DOI 2017 Decision at 2) ("On January 25, 1916, the United States acting through [BIA] purchased a tract of approximately 141 acres that became the Tribe's Rancheria."), and further admit that the Koi Nation had a government-to-government relationship with the United States, *see, e.g.*, Defs.' Mem. Supp. Cross-Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Defs.' Opp'n") at 25, ECF No. 15-1 (referring to the Koi Nation's government-to-government relationship with the United States). As to the second requirement, a tribe may show loss of the government-to-government relationship through "[c]onsistent historical written documentation" from the United States "effectively stating that it no longer recognized a government-to-government relationship with the tribe . . . or taking action to end the government-to-government relationship." 25 C.F.R. § 292.9(b). The defendants do not contest that the federal government treated the tribe as terminated for decades and, thus, that the tribe effectively "lost its government-to-government relationship," as defined in 25 C.F.R. § 292.9(b). *See* Pl.'s Mem. at 39 (summarizing how 25 C.F.R. § 292.9 applies to the Koi Nation); *see also generally* Defs.' Opp'n.; Defs.' Reply Supp. Cross-Mot. Summ. J. ("Defs.' Reply"), ECF No. 20.

6

The three methods for an Indian tribe to be restored to federally recognized status to qualify for the restored lands exception in IGRA's § 20(b), are set out in 25 C.F.R. § 292.10, which provides in full:

> For a tribe to qualify as having been restored to Federal recognition for purposes of §292.7, the tribe must show at least one of the following:
> (a) Congressional enactment of legislation recognizing, acknowledging, affirming, reaffirming, or restoring the government-to-government relationship between the United States and the tribe (required for tribes terminated by Congressional action);
> (b) Recognition through the administrative Federal Acknowledgment Process under §83.8 of this chapter; or
> (c) A Federal court determination in which the United States is a party or court-approved settlement agreement entered into by the United States.

*Id.* § 292.10. These three methods of tribal recognition reflected the same methods expressly identified in "Congressional Findings" for the List Act, enacted almost fifteen years earlier. *See* 25 U.S.C. § 5130 notes (Congressional Findings ¶ 3) (providing that "Indian tribes presently may be recognized by Act of Congress; by the administrative procedures set forth in part 83 of the Code of Federal Regulations denominated 'Procedures for Establishing that an American Indian Group Exists as an Indian Tribe;' or by a decision of a United States court"). The Koi Nation challenges only the scope of the regulation's subsection (b) here.

In addition to these three methods to be "restored to Federal recognition" under § 292.10, a separate regulation, codified at § 292.26, exempts from the Part 292 regulations, which were promulgated in 2008, any earlier final agency decisions or opinions regarding the applicability of IGRA's Section 20 exceptions. *See* 25 C.F.R. § 292.26(a) (stating that the Part 292 regulations "do not alter final agency decisions made pursuant to [Section 20 of IGRA] before" the Part 292 regulations were enacted"); *id.* § 292.26(b) (stating that the Part 292 regulations "shall not apply" when, before these regulations became effective, DOI or the NIGC "issued a written opinion regarding the applicability of [Section 20] for land to be used for a particular gaming

7

establishment, provided that the Department or the NIGC retains full discretion to qualify, withdraw or modify such opinions"). In other words, § 292.26 provides a "grandfather clause" for such earlier decisions or opinions and protects tribes, for which federally recognized status has been gained prior to 2008 by means other than the three methods outlined in § 292.10, from having to re-litigate their eligibility for Section 20 exceptions.

### 3. Process for Federal Acknowledgment of Indian Tribes, 25 C.F.R. Part 83

Until 1978, the federal government's recognition of Indian tribes "proceeded in an ad hoc manner . . . with [BIA] . . . reviewing petitions for federal recognition on a case-by-case basis." *Mackinac Tribe v. Jewell*, 829 F.3d 754, 756 (D.C. Cir. 2016). An "increase" in the number of groups requesting tribal recognition in the 1970s "necessitat[ed]" a "uniform approach." Final Rule, Procedures for Establishing That an American Indian Group Exists as an Indian Tribe, 43 Fed. Reg. 39361, 39361 (Aug. 24, 1978). To this end, DOI promulgated the Procedures for Federal Acknowledgment of Indian Tribes, now codified at 25 C.F.R. § 83, which provided a "Process for Federal Acknowledgment," including "procedures through which Indian groups could seek formal recognition." *Mackinac Tribe*, 829 F.3d at 756.[3] A positive determination under Part 83 "will result in Federal recognition status and the petitioner's addition to the Department's list of federally recognized Indian tribes." 25 C.F.R. § 83.2. Once on that list, the tribe is "eligible for the special programs and services provided by the United States to Indians because of their status as Indians." List Act, 25 U.S.C. § 5131(a); *see also id.* § 5130 notes (Congressional Findings ¶ 3).

---

[3] The Procedures for Federal Acknowledgment of Indian Tribes, currently codified at 25 C.F.R. § 83, were initially codified at 25 C.F.R. § 54, 43 Fed. Reg. 39361 (Sept. 5, 1978), and revised in 1994, 59 Fed. Reg. 9280 (Feb. 25, 1994), and again in 2015, 80 Fed. Reg. 37862 (July 1, 2015).

8

As the D.C. Circuit has summarized, "[a] group seeking recognition under Part 83 must submit a petition to Interior documenting certain criteria, including whether it has been identified as an American Indian entity on a 'substantially continuous basis' since 1900; whether it comprises a 'distinct community;' whether it has historically maintained 'political influence or authority over its members;' and whether its membership 'consists of individuals who descend from a historical Indian tribe.'" *Mackinac Tribe*, 829 F.3d at 756 (quoting 25 C.F.R. § 83.11(a)–(c), (e)). A tribe, for which federal recognition has been terminated that seeks to regain federally recognized status administratively, must follow the Part 83 Federal acknowledgment process to obtain recognition, *id.* at 757, but is entitled to "separate fast tracking provisions," with relaxed requirements for obtaining federal recognition, *Burt Lake Band of Ottawa & Chippewa Indians v. Norton*, 217 F. Supp. 2d 76, 79 (D.D.C. 2002); *see also* 25 C.F.R. § 83.12 (previously codified at 25 C.F.R. § 83.8).

For eligibility under IGRA's restored lands exception, as implemented in 25 C.F.R. § 292.10(b), a previously terminated tribe may seek recognition administratively, using the Federal acknowledgment process provided under 25 C.F.R. § 83, to satisfy the third condition, under *id.* § 292.7, that the tribe "was restored to Federal recognition by one of the means specified in § 292.10."

### 4.    Federally Recognized Indian Tribe List Act of 1994 (List Act)

The List Act requires the Secretary to publish annually in the Federal Register a list of federally recognized Indian tribes. *See* 25 U.S.C. §§ 5130, 5131.[4] As noted, a congressional finding accompanying the List Act describes three avenues for inclusion on the list of federally recognized tribes, *id.* § 5130 notes (Congressional Findings ¶ 3), which methods of federal

---

[4]    The List Act's requirement that the Secretary annually publish a list of federally recognized tribes was originally codified at 25 U.S.C. § 479a-1(a), and subsequently re-codified at 25 U.S.C. § 5131(a).

recognition are the same three routes included in the regulatory definition for "restored to Federal recognition," in 25 C.F.R. § 292.10.

These same congressional findings further state that "Congress has expressly repudiated the policy of terminating recognized Indian tribes," 25 U.S.C. § 5130 notes (Congressional Findings ¶ 5), and task the Secretary "with the responsibility of keeping a list of all federally recognized tribes," *id.* (Congressional Findings ¶ 6), which list "should be accurate, regularly updated, and regularly published," *id.* (Congressional Findings ¶ 7). Congress stressed the need for accuracy in the Federal Register list of federally recognized tribes "since it is used by the various departments and agencies of the United States to determine the eligibility of certain groups to receive services from the United States." *Id.*; *see also id.* (Congressional Findings ¶ 8) (finding that the list "should reflect all of the federally recognized Indian tribes in the United States which are eligible for the special programs and services provided by the United States to Indians because of their status as Indians").

The Secretary's list failed to include the Koi Nation as a federally recognized tribe until 2000, with issuance by DOI's Assistant Secretary of Indian Affairs of the DOI 2000 Recognition Memo. AR at 4 (DOI 2017 Decision at 4).

5.     **The Indian Reorganization Act (IRA)**

The IRA, enacted in 1934, "marked a shift away 'from assimilation policies and toward more tolerance and respect for traditional aspects of Indian culture,'" *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 180 n.8 (2011) (citation omitted), and a return to "principles of tribal self-determination and self-governance" for Indian tribes, *Cty. of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*, 502 U.S. 251, 255 (1992). To further these goals, Congress authorized DOI to purchase land to take into trust for tribes, 25 U.S.C. § 5108, and for

10

ECFR CONTENT

## § 292.10 How does a tribe qualify as having been restored to Federal recognition?

For a tribe to qualify as having been restored to Federal recognition for purposes of § 292.7, the tribe must show at least one of the following:

(a) Congressional enactment of legislation recognizing, acknowledging, affirming, reaffirming, or restoring the government-to-government relationship between the United States and the tribe (required for tribes terminated by Congressional action);

(b) Recognition through the administrative Federal Acknowledgment Process under § 83.8 of this chapter; or

(c) A Federal court determination in which the United States is a party or court-approved settlement agreement entered into by the United States.

# ATTACHMENT 2

how Interior is to carry out its authority, and courts have rejected previous attempts by non-federally recognized groups to cite this provision of the List Act's findings as authorizing judicial recognition outside of Part 83. *See, e.g., Burt Lake Band of Ottawa & Chippewa Indians v. Zinke*, 304 F. Supp. 3d 70, 81 (D.D.C. 2018) ("The Court does not have free-standing authority to by-pass the entire federal recognition process and order the agency to add plaintiff to the List[.]"; dismissing per Rule 12(b)(6) because the "'List Act does not provide an independent cause of action'"); *Chinook Indian Nation v. Zinke*, 326 F. Supp. 3d 1128, 1139 (W.D. Wash. 2018) ( "the Congressional findings accompanying the List Act do not authorize 'a tribe to completely bypass the recognition procedure established by the political branches and create a government-to-government relationship through judicial fiat'") (quoting *Shinnecock Indian Nation v. Kempthorne*, No. 06-CV-5013, 2008 WL 4455599, at *2 (E.D.N.Y. Sept. 30, 2008)).

Consistent with Congress's express endorsement of Part 83 in the List Act's findings, Pub. L. No. 103-454, § 103(3), Interior has chosen to require groups seeking federal recognition to proceed through Part 83, and as discussed in Interior's Motion to Dismiss, Interior has no affirmative duty to consider Plaintiffs' request outside of that context. Defs.' Mot. 17–19. Therefore, Plaintiffs' claims must be dismissed.

> ### 2. Plaintiffs Have Failed to Exhaust Their Administrative Remedies, and Therefore Plaintiffs' Claims Are Not Ripe for Judicial Review.

Plaintiffs have failed to exhaust their administrative remedies; therefore, Plaintiffs claims are not yet ripe for judicial review. According to the United States Supreme Court:

> Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'

*APP. 79*

consideration. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 657 (2007) (noting that "if the EPA's action was arbitrary and capricious . . . , the proper course would have been to remand to the Agency for clarification of its reasons" (citation omitted)). Interior, in turn, would direct Plaintiffs to file a petition for federal acknowledgment pursuant to Part 83, just as it does for any other group seeking federal recognition through Interior. In sum, Plaintiffs must exhaust their administrative remedies under Part 83 before their claims are ripe for judicial review.

### 3. Plaintiffs' Identification of Tribes That Were Federally Recognized Outside of the Part 83 Process Is Irrelevant.

In Plaintiffs' Opposition, they assert that "Defendants are incorrect in their determination that the Part 83 is the only path for federal recognition" and then proceed to list tribes that were federally recognized through other means. Pls.' Opp'n 14–16. However, Plaintiffs' observation regarding such tribes does not support their claim that the Pilchuk Nation is entitled to some extra-regulatory process outside of Part 83.

Since 2015, Interior's express policy has been that any group seeking federal recognition from Interior must proceed through Part 83. Requests for Administrative Acknowledgment of Federal Indian Tribes, 80 Fed. Reg. 37,538 (July 1, 2015) ("2015 Guidance"). In the 2015 Guidance, Interior explained that "it will no longer accept requests for acknowledgment outside the Part 83 process" and will instead rely on Part 83 "as the sole administrative avenue for acknowledgment as a tribe." *Id.* at 37,539. Consideration of Plaintiffs' extra-regulatory request for inclusion on Interior's List of federally recognized tribes would contravene Interior's current, written policy on such requests. Moreover, to the extent that Plaintiffs are insinuating that the Pilchuk Nation should be administratively acknowledged outside of Part 83 because other groups were recognized outside of Part 83 in the past, that argument is unavailing; in their

13

*APP.83*

### 1. Amendment Would Be Futile.

#### a. The Proposed Amended Complaint fails to allege new facts.

First, amendment would be futile because the proposed Amended Complaint, like the original Complaint, does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Indeed, a review of the "Statement of Facts" section of Plaintiffs' Motion (at 3–4) and of the allegations in the proposed Amended Complaint reveals no new factual information, other than misleading allegations that the Court should decline to consider, as discussed further below.

Notwithstanding the lack of any new factual information in Plaintiffs' Amended Complaint, Plaintiffs insist that such information exists. First, Plaintiffs assert that they have "new evidence that there is not [an] administrative process to process the language 'or by decision of U.S. Court'" that appears in an uncodified section of the Federally Recognized Indian Tribe List Act of 1994 ("List Act"), Pub. L. No. 103-454, § 103(3). Pls.' Mot. 6 (citation omitted). According to Plaintiffs, "[t]his information became available after the filing" of the Complaint and will ensure that their proposed Amended Complaint survives Defendants' motion to dismiss.

However, as discussed in Defendants' Reply, "[s]ince 2015, [the Department of the] Interior's express policy has been that any group seeking federal recognition from Interior must proceed through Part 83." Defs.' Reply at 13–14 (citing Requests for Administrative Acknowledgment of Federal Indian Tribes ("2015 Guidance"), 80 Fed. Reg. 37,538 (July 1, 2015)). The 2015 Guidance, in turn, expressly states that Interior's federal acknowledgment process, codified at 25 C.F.R. Part 83 ("Part 83"), is "the sole administrative avenue for

*APP.116*

thereunder, including Form SDR (17 CFR 249.1500) and reports filed pursuant to Rules 13n–11(d) and (f) (17 CFR 240.13n–11(d) and (f)) under the Exchange Act; and

(xviii) Filings made pursuant to Regulation A (§§ 230.251 through 230.262 of this chapter).

\* \* \* \* \*

Dated: June 25, 2015.

**Brent J. Fields,**
*Secretary.*

[FR Doc. 2015–16045 Filed 6–30–15; 8:45 am]

**BILLING CODE 8011–01–P**

## SECURITIES AND EXCHANGE COMMISSION

### 17 CFR Part 275

**[Release No. IA–4129; File No. S7–18–09]**

**RIN 3235–AK39**

### Political Contributions by Certain Investment Advisers: Ban on Third-Party Solicitation; Notice of Compliance Date

**AGENCY:** Securities and Exchange Commission.

**ACTION:** Notice of compliance date.

**SUMMARY:** The Securities and Exchange Commission ("Commission" or "SEC") previously set and extended the compliance date for the ban on third-party solicitation until nine months after the compliance date of a final rule adopted by the Commission by which municipal advisors must register under the Securities Exchange Act of 1934 ("final municipal advisor registration rule") and indicated that notice with respect thereto would be provided in the **Federal Register**. This notice of compliance date is being published to provide the notice of the compliance date.

**DATES:** The compliance date for the ban on third-party solicitation under 17 CFR 275.206(4)–5 [rule 206(4)–5] is July 31, 2015.

**FOR FURTHER INFORMATION CONTACT:** Sirimal R. Mukerjee, Senior Counsel, or Sarah A. Buescher, Branch Chief, at (202) 551–6787 or *IArules@sec.gov,* Investment Adviser Regulation Office, Division of Investment Management, U.S. Securities and Exchange Commission, 100 F Street NE., Washington, DC 20549–8549.

**SUPPLEMENTARY INFORMATION:** The Commission adopted rule 206(4)–5 [17 CFR 275.206(4)–5] ("Pay to Play Rule") under the Investment Advisers Act of 1940 [15 U.S.C. 80b] to prohibit an investment adviser from providing

advisory services for compensation to a government client for two years after the adviser or certain of its executives or employees ("covered associates") make a contribution to certain elected officials or candidates.[1] Rule 206(4)–5 also prohibits an adviser and its covered associates from providing or agreeing to provide, directly or indirectly, payment to any third-party for a solicitation of advisory business from any government entity on behalf of such adviser, unless such third-party is a "regulated person" ("third-party solicitor ban").[2] Rule 206(4)–5 defines a "regulated person" as an SEC-registered investment adviser,[3] a registered broker or dealer subject to pay to play restrictions adopted by a registered national securities association,[4] or a registered municipal advisor subject to pay to play restrictions adopted by the Municipal Securities Rulemaking Board ("MSRB").[5] In addition, the Commission must find, by order, that these pay to play rules: (i) Impose substantially equivalent or more stringent restrictions on broker-dealers or municipal advisors than the Pay to Play Rule imposes on investment advisers; and (ii) are consistent with the objectives of the Pay to Play Rule.[6]

Rule 206(4)–5 became effective on September 13, 2010 and the compliance date for the third-party solicitor ban was set to September 13, 2011.[7] When the Commission added municipal advisors to the definition of regulated person, the Commission also extended the third-party solicitor ban's compliance date to

June 13, 2012.[8] In the absence of a final municipal advisor registration rule, the Commission extended the third-party solicitor ban's compliance date from June 13, 2012 to nine months after the compliance date of the final rule,[9] which is July 31, 2015.[10]

This notice of compliance date is technical in nature and serves solely to fulfill the Commission's commitment to provide the notice for the compliance date it previously set.[11]

Dated: June 25, 2015.

**Brent J. Fields,**
*Secretary.*

[FR Doc. 2015–16048 Filed 6–30–15; 8:45 am]

**BILLING CODE 8011–01–P**

## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

### 25 CFR Part 83

**[156A2100DD/AAKC001030/ A0A501010.999900 253G]**

### Requests for Administrative Acknowledgment of Federal Indian Tribes

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Policy guidance.

**SUMMARY:** This policy guidance establishes the Department's intent to make determinations to acknowledge Federal Indian tribes within the contiguous 48 states only in accordance with the regulations established for that purpose at 25 CFR part 83. This notice directs any unrecognized group requesting that the Department acknowledge it as an Indian tribe, through reaffirmation or any other alternative basis, to petition under 25 CFR part 83 unless an alternate process is established by rulemaking following the effective date of this policy guidance.

**DATES:** This policy guidance is effective July 1, 2015.

**FOR FURTHER INFORMATION CONTACT:** Elizabeth Appel, Director, Office of Regulatory Affairs & Collaborative

---

[1] *Political Contributions by Certain Investment Advisers,* Investment Advisers Act Rel. No. 3043 (July 1, 2010) [75 FR 41018 (July 14, 2010)] ("Pay to Play Release").

[2] *See id.* at Section II.B.2.(b). *See also* 17 CFR 275.206(4)–5(a)(2)(i)(A).

[3] *See* 17 CFR 275.206(4)–5(f)(9)(i).

[4] *See* 17 CFR 275.206(4)–5(f)(9)(ii). While rule 206(4)–5 applies to any registered national securities association, the Financial Industry Regulatory Authority ("FINRA") is currently the only registered national securities association under section 19(a) of the Securities Exchange Act of 1934 [15 U.S.C. 78s(b)]. As such, for convenience, we will refer directly to FINRA in this notice of compliance date when describing the exception for certain broker-dealers from the third-party solicitor ban.

[5] *See* 17 CFR 275.206(4)–5(f)(9)(iii). On June 22, 2011, the Commission amended the Pay to Play Rule to add municipal advisors to the definition of "regulated persons." *See Rules Implementing Amendments to the Investment Advisers Act of 1940,* Investment Advisers Act Rel. No. 3221 (June 22, 2011) [76 FR 42950 (July 19, 2011)] ("Municipal Advisor Addition Release"). The Commission adopted final rules with respect to the registration of municipal advisors on September 20, 2013. *See Registration of Municipal Advisors,* Exchange Act Release No. 70462 (Sept. 20, 2013) [78 FR 67468 (Nov. 12, 2013)] ("Municipal Advisor Registration Release").

[6] *See* 17 CFR 275.206(4)–5(f)(9).

[7] *See* Pay to Play Release at section III.

[8] *See* Municipal Advisor Addition Release at section II.D.1.

[9] *See Political Contributions by Certain Investment Advisers: Ban on Third-Party Solicitation; Extension of Compliance Date,* Investment Advisers Act Rel. No. 3418 (June 8, 2012) [77 FR 35263 (June 13, 2012)] ("Extension Release").

[10] The final date on which a municipal advisor must file a complete application for registration was October 31, 2014. *See* Municipal Advisor Registration Release at section V.

[11] *See* the Extension Release.

Action—Indian Affairs, (202) 273–4680; *elizabeth.appel@bia.gov.*

**SUPPLEMENTARY INFORMATION:**

Prior to the establishment of the regulatory process for establishing that an American Indian group exists as an Indian tribe in 1978 ("the Part 83 process"), the Department used an informal process for the Federal acknowledgment of Indian tribes. The Part 83 regulations formalized the process by which the Department reviewed requests and the criteria required of groups to obtain Federal acknowledgment. The Department has resolved over 50 petitions using the Part 83 process.

However, even after the promulgation of the Part 83 regulations in 1978, there have been a range of requests by unrecognized groups to use other administrative processes to obtain Federal acknowledgment. The Department has utilized those processes in limited circumstances. For example, the Department has "reaffirmed" some tribes and reorganized some half-blood communities as tribes under the Indian Reorganization Act (IRA).

Over the past couple of years, the Department has undertaken a comprehensive review and evaluation of the process and criteria by which it federally acknowledges Indian tribes under 25 CFR part 83. As part of that review of the proposed revisions to Part 83, we also received comments related to the other administrative processes that have occasionally been used by the Department for acknowledgment. For example, the Eastern Band of Cherokee Indians and Stand Up for California requested that the Department utilize only the Part 83 process to acknowledge tribes.

We recognize the concerns expressed in comments about the use of administrative approaches for acknowledgment other than Part 83. Having worked hard to make the Part 83 process more transparent, timely and efficient, while maintaining Part 83's fairness, rigor, and integrity, the Department has decided that, in light of these reforms to improve the Part 83 process, that process should be the only method utilized by the Department to acknowledge an Indian tribe in the contiguous 48 states.[1] The Department

has determined that it will no longer accept requests for acknowledgement outside the Part 83 process. Rather, the Department intends to rely on the newly reformed Part 83 process as the sole administrative avenue for acknowledgment as a tribe.

Of course, the basis for the policy shift being announced today is the Department's reform and improvement of the Part 83 process. The recently revised Part 83 regulations promote fairness, integrity, efficiency and flexibility. No group should be denied access to other mechanisms if the only administrative avenue available to them is widely considered "broken." Thus, this policy guidance is contingent on the Department's ability to implement Part 83, as reformed. If in the future the newly reformed Part 83 process is not in effect and being implemented, this policy guidance is deemed rescinded.

To conclude, any group within the contiguous 48 states seeking Federal acknowledgment as an Indian tribe administratively must petition under 25 CFR part 83 from this date forward. The decision to use only the recently reformed Part 83 process from this point forward does not affect the validity of any determination made prior to the institution of this policy guidance; while the Department exercised its discretionary authority to use those methods of acknowledgment in the past, it no longer will.

Dated: June 26, 2015.

**Kevin K. Washburn,**
*Assistant Secretary—Indian Affairs.*

[FR Doc. 2015–16194 Filed 6–30–15; 8:45 am]

**BILLING CODE 4337–15–P**

---

**DEPARTMENT OF LABOR**

**Office of the Secretary**

**29 CFR Part 18**

**RIN 1290–AA26**

**Rules of Practice and Procedure for Administrative Hearings Before the Office of Administrative Law Judges; Corrections**

**AGENCY:** Office of the Secretary, Labor.

**ACTION:** Correcting amendments.

**SUMMARY:** This document contains corrections to the final regulations which were published in the **Federal Register** of May 19, 2015 (80 FR 28768). Those regulations relate to rules of practice and procedure for administrative hearings before the Office of Administrative Law Judges.

**DATES:** Effective on July 1, 2015.

**FOR FURTHER INFORMATION CONTACT:** Todd Smyth at the U.S. Department of Labor, Office of Administrative Law Judges, 800 K Street NW., Suite 400-North, Washington, DC 20001–8002; telephone (202) 693–7300.

**SUPPLEMENTARY INFORMATION:**

**Background**

The final regulations that are the subject of these corrections became effective on June 18, 2015. The regulations constitute the rules of practice and procedure for administrative hearings before the Office of Administrative Law Judges.

**Need for Correction**

As published, the final regulations contain four internal cross-reference errors, and a typographical error in the title of 29 CFR 18.33(e).

**List of Subjects in 29 CFR Part 18**

Administrative practice and procedure, Labor.

Accordingly, 29 CFR part 18 is corrected by making the following correcting amendments:

**PART 18—RULES OF PRACTICE AND PROCEDURE FOR ADMINISTRATIVE HEARINGS BEFORE THE OFFICE OF ADMINISTRATIVE LAW JUDGES**

■ 1. The authority citation for part 18 continues to read as follows:

**Authority:** 5 U.S.C. 301; 5 U.S.C. 551–553; 5 U.S.C. 571 note; E.O. 12778; 57 FR 7292.

■ 2. Revise paragraph (c) of § 18.32 to read as follows:

**§ 18.32  Computing and extending time.**

\*    \*    \*    \*    \*

(c) *Additional time after certain kinds of service.* When a party may or must act within a specified time after service and service is made under § 18.30(a)(2)(ii)(C) or (D), 3 days are added after the period would otherwise expire under paragraph (a) of this section.

■ 3. Revise paragraph (e) of § 18.33 to read as follows:

**§ 18.33  Motions and other papers.**

\*    \*    \*    \*    \*

(e) *Motions made at hearing.* A motion made at a hearing may be stated orally unless the judge determines that a written motion or response would best serve the ends of justice.

\*    \*    \*    \*    \*

■ 4. Revise paragraph (d)(1) and the introductory text of paragraph (d)(3) of § 18.51 to read as follows:

**§ 18.51  Discovery scope and limits.**

\*    \*    \*    \*    \*

---

[1] With regard to Alaska, under 473a, Congress has specifically provided: "that groups of Indians in Alaska not recognized prior to May 1, 1936, as bands or tribes, but having a common bond of occupation, or association, or residence within a well-defined neighborhood, community, or rural district, may organize to adopt constitutions and bylaws and to receive charters of incorporation and Federal loans under sections 470, 476, and 477 of this title."

# PERKINSCOie

700 13th Street, NW
Suite 800
Washington, D.C. 20005-3960

T  +1.202.654.6200
F  +1.202.654.6211
PerkinsCoie.com

February 25, 2021

Donald C. Baur
DBaur@perkinscoie.com
D.  +1.202.654.6234
F.  +1.202.654.9105

Bryan Newland
Principal Deputy Assistant Secretary for Indian Affairs
U.S. Department of the Interior
Bureau of Indian Affairs
1849 C Street, N.W., MS-3642-MIB
Washington, D.C. 20240

Dear Principal Deputy Assistant Secretary Newland:

On behalf of the Towns of Ledyard, North Stonington, and Preston, Connecticut, we submit these comments regarding the recent vacatur by two federal district courts of the ban on re-petitioning by previously denied petitioners for federal acknowledgment as an Indian tribe under the 25 C.F.R. Part 83 tribal acknowledgment regulations. *Chinook Indian Nation v. Bernhardt*, No. 3:17-cv-05668, 2020 WL 128563 (W.D. Wash., Jan. 10, 2020) (slip op.) (*Chinook Indian Nation*); *Burt Lake Band of Ottawa and Chippewa Indians v. Bernhardt*, No. 17-0038, 2020 WL 1451566 (D.D.C., March 25, 2020) (slip op.) (*Burt Lake Band*). Pending completion of these remands, the Department must revert to the 1994 regulations to govern acknowledgment decisions because the 2015 regulation is now legally defective. Accordingly, repetitioning cannot proceed in the interim.

The *Chinook Indian Nation* and *Burt Lake Band* courts did not address full vacatur of the regulations because the plaintiffs in those cases only challenged the ban on re-petitioning, as they sought to re-petition under the new regulations. Nonetheless, the 2015 regulations are not severable and full vacatur is the correct legal remedy. When only a portion of a regulation is struck down, full vacatur is appropriate where there is "substantial doubt" that the agency would have promulgated the severed remainder by itself, where the agency intended for the rule to function as a single, interrelated and integral action, or when the remainder of the regulation would not function sensibly without the stricken provision. *See Am. Petroleum Institute v. EPA*, 862 F.3d 50, 71 (D.C. Cir. 2017), *decision modified on reh'g*, 883 F.3d 918 (D.C. Cir. 2018) ("We will sever and affirm a portion of an administrative regulation only when we can say without any substantial doubt that the agency would have adopted the severed portion on its own.") (quoting *New Jersey v. EPA*, 517 F.3d 574, 584 (D.C. Cir. 2008)) (quotation marks and brackets removed); *North Carolina v. EPA*, 531 F.3d 896, 929 (D.C. Cir. 2008) (noting that severance depends on agency intent and holding that severance was improper where agency had treated rule as "one, integral action"), *on reh'g in part*, 550 F.3d 1176 (D.C. Cir. 2008);

February 25, 2021
Page 2

*Financial Planning Ass'n v. SEC*, 482 F.3d 481, 493 (D.C. Cir. 2007) (refusing severance where text of rule indicated parts were interrelated); *MD/DC/DE Broadcasters Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001) ("Whether the offending portion of a regulation is severable depends upon the intent of the agency and upon whether the remainder of the regulation could function sensibly without the stricken provision."). *See generally,* Wright & Miller, 33 Fed. Prac. & Proc. Judicial Review § 8381, n.14 (2d ed.) (Vacation and Remand of Agency Action).

Vacatur of the re-petitioning ban voids the entire 2015 regulations because the Department intended the re-petitioning ban to be an integral part of the regulations, the severed remainder suffers from a number of legal defects that render the remainder arbitrary and possibly unconstitutional, and there is therefore substantial doubt that the Department would have promulgated the remainder without the re-petition ban. *See generally*, Tyler & Elliott, *Administrative Severability Clauses*, 124 Yale L.J. 2286 (2015) (discussing severability of regulations generally and discussing examples of full vacatur where the remainder by itself is unconstitutional, ultra vires, or arbitrary and capricious).

First, as the Department stated in the Final Rule and argued in both cases, the Department's position has consistently been that it did not intend to change the substantive criteria in any significant way. Final Rule, 80 Fed. Reg. 37862, 37878 (July 1, 2015) ("Because the final rule does not make significant changes to the criteria, the Department's precedent stands."); *Chinook Indian Nation* at \*15 ("DOI argues that allowing re-petitioning is unnecessary because the Final Rule merely codifies existing practices and does not alter the substantive criteria for recognition."); *Burt Lake Band* at \*18 ("Defendants maintain in their summary judgment pleadings that the Final Rule serves this goal [to promote consistency with prior decisions] 'because the 2015 Final Rule did not substantially change the standards for acknowledgment;' … 'mak[ing] any re-petition inherently unnecessary.'") (citations omitted).

Two courts have now held that, despite the Department's stated intent, the 2015 rulemaking resulted in the significant weakening of the substantive criteria for acknowledgment. *Chinook Indian Nation* at \*15 ("DOI 'entirely failed to consider an important aspect of the problem' when it did not explain why banning re-petitioning is appropriate in light of the Final Rule's amended standards.") (citation omitted); *id.* at \*16 ("DOI also tries to gloss over other important changes to the substantive criteria, such as the new 1900-present consideration period for criteria (b) [community] and (c) [political influence or authority]"); *id.* at \*17 ("the Court is skeptical that res judicata is applicable in a situation such as this where legal standards have changed between the 1994 and 2015 regulations"). The description by the *Burt Lake Band* court is especially telling:

February 25, 2021
Page 3

> The agency's insistence that the Final Rule ushered in no substantive changes is belied by its own description of the amendments it implemented. The Rule itself states: 'The rule does not substantively change the Part 83 criteria, *except in two instances.*' [including changes allowing acceptance of all evidence of Indian identity, including self-identification, and expanding the definition of a Tribal marriage for purposes of meeting the "community" criterion] … These are not minor changes.

*Id.* at *18–19 (emphasis in original; citations omitted). Thus, the remainder of the rule actually contradicts the Department's stated intent.

Second, the re-petitioning ban was an integral part of the rule as a whole because its inclusion was the basis for dismissing numerous concerns raised by commenters. *See* 80 Fed. Reg. at 37874 (listing objections to allowing re-petitioning). For example, the *Chinook Indian Nation* court noted that commenters raised res judicata and finality concerns regarding re-petitioning, and also noted that the Department nowhere addressed these concerns in its justification for the ban. *Chinook Indian Nation* at *16–17. Res judicata and finality concerns raised by re-petitioning were avoided with the ban, but are unavoidable now that the ban has been vacated. The Department's failure to consider the concerns raised by commenters therefore renders promulgation of the remainder arbitrary and capricious because the Department "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Department similarly failed to consider commenters' numerous other objections to re-petitioning.

Third, because the Department did not believe it was weakening the criteria, the Department entirely failed to address the implications of such weakening, including the extent of inconsistency with Departmental and Supreme Court precedent, as well as the Constitution (as raised by commenters). *See* 80 Fed. Reg. at 37864–66 (comments regarding weakening of criteria), 37878–79 (Departmental precedent). For example, possibly the most controversial and significant weakening of the 1994 criteria was the change in the starting date for documenting continuous tribal existence, from 1789 or the date of first sustained contact with non-Indians, to 1900. Under Supreme Court precedent, however, continuous tribal existence throughout historical times is an essential element of tribal sovereignty. *See Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 764 (1985) (tribal sovereignty is retained from before formation of United States); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) (tribes are "separate sovereigns pre-existing the Constitution"); *United States v. Wheeler*, 435 U.S. 313, 322–323 (1978) (a tribe is "a community of people who have continued as a body politic *without interruption since time immemorial* and retain powers of inherent authority.") (emphasis added). The Department

February 25, 2021
Page 4

asserted that the 1900 starting date was a reliable proxy for continuous tribal existence before 1900, *see* 80 Fed. Reg. at 37863, but, contrary to the Supreme Court's precedent, the change in starting date clearly allows the acknowledgment of petitioner groups that lack a continuous tribal existence before 1900. The Department entirely failed to address this problem.

In the 2015 rulemaking, the Department largely discounted comments regarding this and other changes, and in both the *Chinook Indian Nation* and *Burt Lake Band* litigation, the Department argued that the 2015 rulemaking did not significantly alter the substantive criteria. Those courts, however, clearly held the opposite. As previously noted, the *Chinook Indian Nation* court stated, "DOI also tries to gloss over other important changed in the substantive criteria, such as the new 1900-present consideration period … [t]hese are significant revisions that could prove dispositive for some re-petitioners." *Chinook Indian Nation* at *16. The court also noted with interest that a prior draft of the Final Rule justified eliminating the re-petition ban on the grounds that "the criteria in the Final Rule remain substantively unchanged overall," but eliminated that language in the Final Rule, "suggesting that the agency concluded it was inaccurate." *Id.* at 16 n.7 (citation to the record omitted). Similarly, the *Burt Lake Band* court held that, "The agency's insistence that the Final Rule ushered in no substantive changes is belied by its own description of the amendments it implemented. … These are not minor changes." *Burt Lake Band* at *18–19. At a minimum, the Department's failure to consider these concerns at all (because of the mistaken belief that it was not changing the criteria) renders the remaining regulations arbitrary and capricious, if not ultra vires or even unconstitutional.

Importantly, even if the 2015 regulations were severable, re-petitioning would still be barred because the ban on re-petitioning in the 1994 regulation would apply instead. There is a presumption that the effect of invalidating a rule is "to reinstate the rules previously in force." *Georgetown Univ. Hosp. v. Bowen*, 821 F.2d 750, 757 (1987) (quoting *Action on Smoking & Health v. CAB*, 713 F.2d 795, 797 (D.C. Cir. 1983)). Thus, partial vacatur of the ban in the 2015 rules has the effect of reinstating the ban in the 1994 rules.

Finally, we note that even with full vacatur, pending petitions are minimally affected, as no final determinations have yet been issued yet under the 2015 regulations. In addition, a number of petitioners chose to continue the process under the 1994 regulations, which remain in effect for that purpose, and would be unaffected. Under either full or partial vacatur, however, re-petitioning cannot proceed pending completion of the remands.

Sincerely,

Donald C. Baur
Odin A. Smith

February 25, 2021
Page 5

cc:     Senator Richard Blumenthal
        Senator Chris Murphy
        Representative Joe Courtney
        Representative Rosa DeLauro
        Representative Jahana Hayes
        Representative James Himes
        Representative John Larson
        Governor Ned Lamont
        Attorney General William Tong

# ATTACHMENT 3

**INTRODUCTION**

The Defendants' opposition brief is over reliant on Local Rule 7 (m), distorts the record and seeks mostly procedural escapes from the merits of Plaintiffs claims and motions.

The Defendants arguments that the Plaintiffs did not comply with Local Rule 7 (m) in the motion for leave to amend is incorrect. Plaintiffs respectfully argue they did comply with rule 7 (m), because the motion for leave to amend contains a statement that Plaintiffs did discuss the motion with Defendants prior to its filing, and also conatins statement that the motion is opposed by the Defendants. In support of this argument, Plaintiffs filed the declaration of Kurt Kanam, which also statement and has an exhibit showing the email exchange with council for the defendants specifically to comply with Local Rule a 7(m) and opposing council's response.

In addition, Plaintiffs respectfully argue Local Rule 7 (m) is not necessary because the District of Columbia has consistently held that motions which seek a final determination of rights does not require compliance with Local Rule 7(m). The Motion for Expedited hearing and the Motion for leave to file a memorandum of support are filings which seek a final determination of rights under CR 57 , would eliminate a claim and thus would not be subject to Local Rule 7(m).

Additionally, the Defendants' have placed this court in the legally impossible position of dismissing a combined complaint for administrative review, declaratory and writ relief, via a motion to dismiss under the APA standard, while the Defendants claim there is no APA relief for the remedy Plaintiffs seeks. The Defendants ask this court to do so without an administrative record for anyone to quote, or official agency position this court can rely on to make a ruling.

In essence, the Defendants are impermissibly asking this court to substitute its opinion for that of the agency and allow the agency to be in contempt of Congress and violate the separation

*APP.400*

==of powers doctrine, while swallowing the Judicial and Congressional elements of the Federally Recognized Indian Tribe List Act of 1994 into Part 83, without evidence of an agency position.==

Plaintiffs also argue common-sense dictates that if the APA does not provide an avenue for relief for the Plaintiffs, the APA cannot possibly provide relief for the Defendants. The motion to dismiss under the APA is moot if there isn't an administrative process under the APA. However, because the agency record does not reflect this alleged agency policy this court must first seek and obtain an official administrative record and official agency policy that has undergone notice and comment and developed into an agency rule.[1]

Plaintiffs also argue that there is still an Act of Congress which places a requirement on the Secretary of Interior to federally recognize tribes that have been recognized by a "decision of a U.S. Court" and if that process is not found under the APA, then this case must be resolved via writ of mandamus or in the alternative declaratory and injunctive relief. The complaint has now been amended to allow the court to operate under the proper jurisdiction.

Plaintiffs also argue there are requirements under Administrative Procedure Act Rule 17 and case law doctrine to make a ruling based on an administrative record or official agency position. The Agency has not filed an agency record within the required time under the APA,[2] and has not treated this case as an APA case unless it suits them. [3]

---

[1] While Defendants claim there is an agency rule for this process, they also claim there is not one. That means the agency process for administratively processing judicial decisions has obviously not undergone the notice and comment requirement.

[2] The defendants Seek dismissal under the APA but has not provided the agency record pursuant to Rule 17. 40 days has long since passed. Appellate Rule 17 may apply because the district court judge sits in the position of an appellate tribunal Appellate Rule 17 applies. see also *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal.)

[3] The Defendants now assert there are administrative procedures in the federal register.

*APP.401*

# CHAPTER FIVE
# ADMINISTRATIVE RECORD
# FOR JUDICIAL REVIEW

---

The Guidelines should include a section that addresses policies and practices for managing the administrative record for judicial review of rules developed through informal rulemaking. This section should explain to agency personnel:

5.1    What is the administrative record for judicial review?

5.2    Why do agency personnel compile the administrative record for judicial review?

5.3    Who compiles the administrative record for judicial review?

5.4    When do agency personnel compile the administrative record for judicial review?

5.5    What materials belong in the administrative record for judicial review?

5.6    How do agency personnel search for materials that belong in the administrative record for judicial review?

5.7    What is the format of the administrative record for judicial review?

5.8    How do agency personnel organize the administrative record for judicial review?

5.9    How does the agency certify the administrative record for judicial review?

5.10    How does the agency file the administrative record for judicial review?

5.11    How does the agency preserve the administrative record for judicial review?

---

## 5.1    What is the administrative record for judicial review?

The Guidelines should explain that the administrative record for judicial review is the compilation of materials that a court uses to assess the legal adequacy of the agency's final rule during the judicial review process (described in Chapter 1).[1] The administrative record for judicial review consists of the "whole record" before the agency during the rulemaking process.[2]

---

[1] Agencies may wish to clarify in the Guidelines that administrative records for judicial review are not unique to informal rulemaking. Agencies also prepare such records when someone challenges other agency actions such as adjudicative orders and rules developed through processes other than informal rulemaking.

[2] 5 U.S.C. § 706.

33

The Guidelines should explain that the agency is responsible for compiling the administrative record for judicial review in the first instance and providing it to the court as the record on review of the agency's final rule.

## 5.2  Why do agency personnel compile the administrative record for judicial review?

The Guidelines should explain that the agency compiles an administrative record for judicial review to allow the court to assess the legal adequacy of a final rule during the judicial review process (described in Chapter 1).

The Guidelines should emphasize that courts usually rely solely on the administrative record for judicial review to judge the legal adequacy of the final rule. Agencies may wish to highlight the adverse consequences, for the agency and agency personnel, that can result from an inadequate administrative record for judicial review.

### EXAMPLE (EPA)

An inadequate record may mean that the Agency action is overturned by a reviewing court or remanded for additional explanation. That in turn can require additional staff time and resources. In addition, some courts faced with an inadequate record will allow supplementation of the record by the opposing parties or will allow discovery, which can also be very time- and resource-intensive. Compilation of a complete administrative record will help the Agency avoid these adverse consequences in litigation.[3]

## 5.3  Who compiles the administrative record for judicial review?

There are many tasks associated with preparing an administrative record for judicial review, such as:

- Searching for materials that are related to the rulemaking,
- Identifying which of those materials do or do not belong in the administrative record for judicial review,
- Compiling and organizing the record,

---

[3] EPA Guidelines at 5.

*Handbook on Compiling Administrative Records for Informal Rulemaking*

- Indexing the record,
- Reviewing the record for completeness,
- Certifying that the record is complete, and
- Filing the record with the court.

Agencies allocate these responsibilities depending on their unique circumstances. Some tasks may be performed by agency personnel in the program office that developed the final rule. Other tasks may be performed by attorneys in a general counsel's office or personnel in a records-management office. The Guidelines should explain which tasks are performed by whom and how different personnel work together to successfully provide an adequate administrative record to a reviewing court.

One common practice is to assign to a single official primary responsibility for coordinating and overseeing the preparation of an administrative record for judicial review. This official may go by names such as "custodian" or "coordinator." Depending on an agency's needs, it may be useful for the Guidelines to include general principles for selecting an official who will be effective in this role.

## EXAMPLE (NOAA)

To effectively assemble an Administrative Record, either once litigation is anticipated or once NOAA is sued, the decision-maker must designate a "Custodian" who is responsible for compiling and maintaining the documents and materials that will comprise the Administrative Record.

The Custodian generally should be a program manager, project manager, or staff person with significant drafting and analytical responsibility for the action, or a person who was otherwise substantially involved in the merits of the matter. Line Offices should consider providing specific guidance for identifying the agency employee who is likely to be the most well-suited to serve as Custodian for any given decision-making process.

Importantly, the Custodian must be able to identify which documents belong in the Administrative Record and, in the event of litigation, be prepared to provide a declaration about its preparation.

As soon as the Custodian is identified, the person should get in touch with the appropriate NOAA General Counsel's Office attorney assigned to work on the matter.[4]

## 5.4   When do agency personnel compile the administrative record for judicial review?

The Guidelines should explain the agency's policies for when it begins to compile the administrative record for judicial review, for example when someone files a lawsuit in federal court challenging a final rule or it is reasonably anticipated that someone will file such a lawsuit. The Guidelines should emphasize that maintaining an internal rulemaking record throughout the rulemaking process, as described in Chapter 3, will help agency personnel accurately and efficiently compile an administrative record for judicial review in the event of litigation.

## 5.5   What materials belong in the administrative record for judicial review?

The Guidelines should explain that the administrative record for judicial review should contain the complete story of the decisionmaking process, from the start of the informal rulemaking process through publication of the final rule. As a general principle, materials that the final decisionmaker directly or indirectly considered during the course of the rulemaking belong in the administrative record for judicial review. This will enable a reviewing court to assess whether the agency followed all required procedures, adequately considered all information before the agency, and issued a final rule that is supported by that information.

The Guidelines can highlight specific materials that typically belong in the administrative record for judicial review, such as:

- Notices related to the rulemaking;
- Comments and other public submissions related to the rulemaking;
- Transcripts or recordings of public hearings, meetings, and other oral presentations made in the course of the rulemaking;
- Documentation of substantive communications with people outside the agency related to the rulemaking ("ex parte communications");

---

[4] NOAA Guidelines at 5.

- Reports or recommendations of relevant advisory committees;
- Scientific, technical, and other background materials that the agency relied on or cited in notices related to the rulemaking; and
- Other materials required by statute, executive order, or agency rule to be considered or made public in connection with the rulemaking.

The Guidelines should emphasize that materials related to the rulemaking belong in the administrative record for judicial review even if they do not support the final rule. They agency may need to demonstrate to a court that it considered opposing viewpoints, contrary facts, and regulatory alternatives that were not adopted.

Agency personnel may have questions about whether certain materials are related to the rulemaking or belong in the administrative record for judicial review. Questions can be especially common for certain kinds of materials, such as drafts, internal emails and other communications, materials from a related rulemaking, background materials that agency personnel reviewed but that the agency did not cite in a public notice, and especially voluminous materials that are publicly available elsewhere. The Guidelines should encourage agency personnel to consult with an attorney or other qualified official when they have questions.

### EXAMPLE (EPA)

The development of administrative records is a highly case-specific endeavor and these recommendations do not address all questions concerning these administrative records. However, this document should provide clarity and assistance for the most often-asked questions pertaining to administrative records. Questions that are not addressed in this document should be referred to the Office of General Counsel (OGC) or Regional attorney working on a particular matter.[5]

The Guidelines should explain that agency attorneys or DOJ attorneys may ultimately decide not to include some materials related to the rulemaking in the final version of the administrative record for judicial review that is filed with a court. There are several reasons why an attorney may decide not to include a document or other material in the final administrative record for judicial review. Federal law may protect it from public disclosure, for example, or the material may be classified, confidential, or privileged.

---

[5] EPA Guidelines, at 3–4.

The Guidelines should emphasize, however, that only a designated attorney or other qualified person can decide that materials related to the rulemaking do not belong in the final version of the administrative record for judicial review. Other personnel should not make their own decisions about excluding materials that are related to the rulemaking from the administrative record for judicial review.

## 5.6    How do agency personnel search for materials that belong in the administrative record for judicial review?

In addition to explaining who coordinates the search for materials that belong in the administrative record (see Section 5.3), the Guidelines should explain how agency personnel should go about conducting that search. As described in Chapter 3, it is a best practice for agencies to maintain an internal rulemaking record throughout the rulemaking process. If agency personnel maintain a good, contemporaneous internal rulemaking record, most materials that belong in the administrative record for judicial review should be easy to find. Still, agency personnel may need to take steps to look for materials that are not maintained in the internal rulemaking record or verify that there are no other materials that belong in the administrative record for judicial review.

### EXAMPLE (DOI)

During the initial search phase, a designated employee (the "AR Coordinator") should begin by examining the Decision File,[6] if any, because most, if not all, of the documents that go into the AR should be in a properly maintained Decision File. The AR Coordinator should also direct an additional and thorough search in order to collect other relevant documents, including all primary and supporting documents, which may not be included in the Decision File.[7]

In addition to conducting the search for materials that belong in the administrative record for judicial review, it is often a best practice to document the search. The agency may rely on this documentation to show that it conducted a thorough search for relevant materials and compiled a complete record. The Guidelines should provide instructions for how to document the search for materials that belong in the administrative record for judicial review.

---

[6] DOI Guidelines uses the term "Decision File" to refer to what this *Handbook* calls the "rulemaking record."

[7] DOI Guidelines at 5.

> **EXAMPLE (NOAA)**
>
> The Custodian should keep careful track of who has been asked to submit materials, what materials the person has been asked to submit and has submitted, where the person searched for documents, who was consulted in the process and how the Administrative Record has been assembled.[8]

## 5.7 What is the format of the administrative record for judicial review?

Agencies use different business processes, systems, and technologies to compile, manage, and review administrative records for judicial review. Each agency should describe in its Guidelines the specific processes, systems, and technologies that agency personnel should use.

Federal court rules determine the format of the final version of the administrative record for judicial review. The agency or DOJ will usually submit the final version as a Portable Document Format (PDF) file through the court's electronic filing system. Special handling may be required for records that are especially large or contain information that is protected from public disclosure (e.g., confidential business information, copyrighted materials).

## 5.8 How do agency personnel organize the administrative record for judicial review?

The Guidelines should describe any requirements or general principles for organizing the administrative record for judicial review, for example:

- Omit duplicate materials;
- Compile materials in a logical order (e.g., chronologically, topically);
- Label materials with important metadata (e.g., date, sender, recipient, identifying number);
- Number pages within materials and across the administrative record for judicial review;
- Comply with any practices that court rules require or the agency agreed to follow; and

---

[8] NOAA Guidelines at 12.

- Segregate materials that may require special handling (e.g., confidential business information, copyrighted materials).

The Guidelines should also provide instructions for preparing an index of the contents of the administrative record for judicial review as well as a privilege log, if necessary or warranted, which describes materials related to the rulemaking that agency or DOJ attorneys decide do not belong in the record (see Section 5.5). The Guidelines can include a sample index and privilege log as appendices.[9]

## 5.9    How does the agency certify the administrative record for judicial review?

The administrative record for judicial review will include an affidavit, made by an agency official, attesting to the contents and accuracy of the record. The Guidelines should explain who is responsible for certifying the record.

### EXAMPLE (EPA)

Unless otherwise provided for in a particular Agency program, the person who certifies the record for litigation should generally be the highest level career manager with oversight responsibility for the action for which the record is developed; at Headquarters, that would generally be the relevant office director. For Regional offices, this would generally be the relevant division director.[10]

The Guidelines should also explain the process for certifying the record. If there is a standard form that agency personnel should use to certify administrative records for judicial review, it can be included as an appendix to the Guidelines.[11]

## 5.10   How does the agency file the administrative record for judicial review?

The Guidelines should note that the exact process for filing an administrative record for judicial review depends on the rules of the court in which the litigation takes place, and that an attorney will provide specific instructions in each case.

---

[9] *See* DOI Guidelines at Appendix 1 and Appendix 2.
[10] EPA Guidelines at 12.
[11] *See* DOI Guidelines at Appendix 3.

*Handbook on Compiling Administrative Records for Informal Rulemaking*

> **EXAMPLE (DOI)**
>
> Different courts have different rules for filing an AR. The Office of the Solicitor will work with the Department of Justice, the court, and the opposing party and will provide specific instructions to the AR Coordinator.[12]

## 5.11 How does the agency preserve the administrative record for judicial review?

Like other agency records, administrative records for judicial review are subject to federal laws and policies on records management. The Guidelines should include instructions for preserving the administrative record for judicial review.

---

[12] DOI Guidelines at 1313

# ATTACHMENT 4

## RE: [External]

Appel, Elizabeth <EAppel@cns.gov>
Thu 6/8/2023 11:06 AM
To:

- john worthington <worthingtonjw2u@hotmail.com>

Hi Mr. Worthington-

To my memory, the 2015 policy guidance we issued related to *administrative* acknowledgment of Tribes (i.e., acknowledgment of Tribes by the Executive Branch) and did not address Judicial Branch recognition.

If you have further questions, please contact Lee Fleming, Director, Office of Federal Acknowledgment (lee.fleming@bia.gov) as I am no longer with the Department of the Interior.

Best-
Liz

**From:** john worthington <worthingtonjw2u@hotmail.com>
**Sent:** Thursday, June 8, 2023 1:48 PM
**To:** Appel, Elizabeth <EAppel@cns.gov>
**Subject:** [External]

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

You don't often get email from worthingtonjw2u@hotmail.com. Learn why this is important

Hello,

I would love to get some more information about the 2015 DOI guidelines which removed judicial branch tribal recognition.

I thought the DOI said it only changed "Part83' in two instances.

Please explain when judicial branch tribal recognition was removed from the list act during the 2015 guidleines you helped develop.
Thanks

John Worthington

Sent from Mail for Windows

# ATTACHMENT 5

Hello,

To the following list of United States Attorneys of record involved in the litigation in *Kanam v. Haaland*, Civ. A. *Kanam v. Haaland*, Civ. A. 1:22-cv-03183-RBW( D.D.C. 2022), in *Kanam v. Haaland*, Civ. A.No. 21-1690, 2022 WL 2315552 (D.D.C. June 28, 2022) and *Kanam v. Haaland*, No. 22-5197, 2023 WL 3063526 (D.C. Cir. Apr. 25, 2023). Those attorneys are:

Benton Gregory Peterson, Esquire, Assistant U.S. Attorney
Direct: 202-252-2534
Email: benton.peterson@usdoj.gov
Fax: 202-252-2599
[COR LD NTC Gvt US Attorney]
U.S. Attorney's Office
(USA) Civil Division
Firm: 202-252-2500
601 D Street, NW
Washington, DC 20530


John L. Smeltzer
Email: john.smeltzer@usdoj.gov
[COR LD NTC Gvt US DOJ]
U.S. Department of Justice
(DOJ) Environment and Natural Resources Division
Firm: 202-514-2000
PO Box 7415, Ben Franklin Station
Washington, DC 20044-7415


R. Craig Lawrence
Email: craig.lawrence@usdoj.gov
[COR NTC Gvt US Attorney]
U.S. Attorney's Office
(USA) Civil Division
Firm: 202-252-2500
601 D Street, NW
Washington, DC 20530


Mary Gabrielle Sprague, Esquire, Attorney
Email: mary.gay.sprague@usdoj.gov
[COR NTC Gvt US DOJ]
U.S. Department of Justice

(DOJ) Environment and Natural Resources Division
Firm: 202-514-2000
PO Box 7415, Ben Franklin Station
Washington, DC 20044-7415

This email addresses a misrepresentation to the District Court and Court of Appeals for the District of Columbia and the requirement under the Rules of Professional Conduct for the District of Columbia to correct a false statement of material fact.

In the cases above, Counsel for the Defendants have repeatedly argued in the briefing that there are only two avenues for federal tribal recognition. (Administratively under "Part 83"and through Congress. Moreover, the Attorneys have argued the "2015 DOI Guidelines" eliminated Judicial Branch tribal recognition.

Recently the Department of Interior's former employee Elizabeth Appel, the former Director of the Office of Regulatory Affairs & Collaborative Action—Indian Affairs for the U.S. Department of Interior, the listed DOI official on the 2015 DOI guidelines published in the Federal Register / Vol. 80, No. 126 / Wednesday, July 1, 2015 / Rules and Regulations recently wrote:

"To my memory, the 2015 policy guidance we issued related to *administrative* acknowledgment of Tribes (i.e., acknowledgment of Tribes by the Executive Branch) and did not address Judicial Branch recognition"


The full response is here:


**RE: [External]**

Appel, Elizabeth <EAppel@cns.gov>

Thu 6/8/2023 11:06 AM

To: john worthington <worthingtonjw2u@hotmail.com>


Hi Mr. Worthington-

To my memory, the 2015 policy guidance we issued related to *administrative* acknowledgment of Tribes (i.e., acknowledgment of Tribes by the Executive Branch) and did not address Judicial Branch recognition.

If you have further questions, please contact Lee Fleming, Director, Office of Federal Acknowledgment (lee.fleming@bia.gov) as I am no longer with the Department of the Interior.


Best-

Liz


As shown above, the argument that the 2015 guidelines removed Judicial

Branch tribal recognition was and still is an ongoing misrepresentation of fact.

Wherefore, Kurt Kanam and Pilchuck Nation respectfully request immediate compliance with the Rules of Professional Conduct for the District of Columbia to correct a false statement of material fact.

RPC 3.3 (a)(1) reads:

(a) A lawyer shall not knowingly:

(1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer, unless correction would require disclosure of information that is prohibited by Rule 1.6;

Accordingly, please inform Judges: Richard J. Leon, Patricia A. Millet, Cornelia T.L. Pillard, Justin R. Walker, Gregory G. Katsas, Karen L. Henderson, and Florence Y. Pan that: (1) there are three paths for federal tribal recognition not two, (2) the 2015 guidelines did not remove Judiciary Branch, (3) the U.S Department of Interior refuses follow the List Act and effectuate Judiciary Branch tribal recognition.

A copy of this letter will be sent to the U.S. Attorneys supervisors listed below:


John C. Truong

Matthew M. Graves

USADC.ServiceCivil@usdoj.gov

pursuant to RPC 5.1 (C) (2) which reads:

(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

(2) The lawyer has direct supervisory authority over the other lawyer or is a partner or has comparable managerial authority in the law firm or government agency in which the other lawyer practices, and knows or reasonably should know of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

**Rules of Professional Conduct**

**Rule 3.3: Candor to Tribunal**

(a) A lawyer shall not knowingly:
(1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer, unless correction would require disclosure of information that is prohibited by Rule 1.6;
(2) Counsel or assist a client to engage in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good-faith effort to determine the validity, scope, meaning, or application of the law;
(3) Fail to disclose to the tribunal legal authority in the controlling jurisdiction not disclosed by opposing counsel and known to the lawyer to be dispositive of a question at issue and directly adverse to the position of the client; or
(4) Offer evidence that the lawyer knows to be false, except as provided in paragraph (b). A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

(b) When the witness who intends to give evidence that the lawyer knows to be false is the lawyer's client and is the accused in a criminal case, the lawyer shall first make a good-faith effort to dissuade the client from presenting the false evidence; if the lawyer is unable to dissuade the client, the lawyer shall seek leave of the tribunal to withdraw. If the lawyer is unable to dissuade the client or to withdraw without seriously harming the client, the lawyer may put the client on the stand to testify in a narrative fashion, but the lawyer shall not examine the client in such manner as to elicit testimony which the lawyer knows to be false, and shall not argue the probative value of the client's testimony in closing argument.
(c) The duties stated in paragraph (a) continue to the conclusion of the proceeding.
(d) A lawyer who receives information clearly establishing that a fraud has been perpetrated upon the tribunal shall promptly take reasonable remedial measures, including disclosure to the tribunal to the extent disclosure is permitted by Rule 1.6(d).

**Comment**

[1] This rule defines the duty of candor to the tribunal. See Rule 1.0(l) for the definition of "tribunal." The rule also applies when the lawyer is representing a client in an ancillary proceeding conducted pursuant to the tribunal's adjudicative authority, such as a deposition. In dealing with a tribunal the lawyer is also required to comply with the general requirements of Rule 1.2(e) and (f). However, an advocate does not vouch for the evidence submitted in a cause; the tribunal is responsible for assessing its probative value.

**Representations by a Lawyer**

[2] An assertion purported to be made by the lawyer, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There may be circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. If the lawyer comes to know that a statement of material fact or law that the lawyer previously made to the tribunal is false, the lawyer has a duty to correct the statement, unless correction would require a disclosure of information that is prohibited by Rule 1.6. This provision in paragraph (a)(1) differs from ABA Model Rule 3.3(a)(1), which requires a lawyer to disclose information otherwise protected by Rule 1.6 if necessary to correct the lawyer's false statement. If Rule 1.6 permits a lawyer to disclose a client confidence or secret, D.C. Rule 3.3(a)(1) requires the lawyer to disclose that information to the extent reasonably necessary to correct a false statement of material fact or law. Nothing in D.C. Rule 3.3(a)(1) limits any disclosure duty under Rule 4.1(b) when substantive law requires a lawyer to disclose client information to avoid being deemed to have assisted the client's crime or fraud. The obligation prescribed in Rule 1.2(e) not to counsel a client to commit or assist the client in committing a fraud applies in litigation but is subject to Rule 3.3(b) and (d). Regarding compliance with Rule 1.2(e), see the Comment to that Rule. *See also* Rule 8.4.

**Misleading Legal Argument**

[3] Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in subparagraph (a)(3), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction that has not been disclosed by the opposing party and that is dispositive of a question at issue. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

**Offering Evidence**

[4] When evidence that a lawyer knows to be false is provided by a person who is not the client, the lawyer must refuse to offer it regardless of the client's wishes. This duty is premised on the lawyer's obligation as an officer of the court to prevent the trier of fact from being misled by false evidence. A lawyer does not violate this rule if the lawyer offers the evidence for the purpose of establishing its falsity.

[5] When false evidence is offered by the client, however, a conflict may arise between the

lawyer's duty to keep the client's revelations confidential and the duty of candor to the court. Upon ascertaining that material evidence is false, the lawyer should seek to persuade the client that the evidence should not be offered or, if it has been offered, that its false character should immediately be disclosed. Regardless of the client's wishes, however, a lawyer may not offer evidence of a client if the evidence is known by the lawyer to be false, except to the extent permitted by paragraph (b) where the client is a defendant in a criminal case. The lawyer is obligated not only to refuse to offer false evidence under subparagraph (a)(4) but also to take reasonable remedial measures under paragraph (d) if the false evidence has been offered.

[6] The prohibition against offering false evidence applies only if the lawyer knows that the evidence is false. A lawyer's knowledge that evidence is false can be inferred from the circumstances. *See* Rule 1.0(f). Thus, although a lawyer should resolve doubts about the veracity of testimony or other evidence in favor of the client, the lawyer cannot ignore an obvious falsehood.

[7] Although paragraph (a)(4) prohibits a lawyer from offering evidence only if the lawyer knows it to be false, it also permits the lawyer to refuse to offer testimony or other proof that the lawyer reasonably believes is false. Offering such proof may reflect adversely on the lawyer's ability to discriminate in the quality of evidence and thus impair the lawyer's effectiveness as an advocate. Because of the special protections historically provided criminal defendants, however, this rule does not permit a lawyer to refuse to offer the testimony of such a client where the lawyer reasonably believes but does not know that the testimony will be false. Unless the lawyer knows the testimony will be false, the lawyer must honor the client's decision to testify.

**Remedial Measures**

[8] Paragraph (d) provides that if a lawyer learns that a fraud has been perpetrated on the tribunal, the lawyer must take reasonable remedial measures. If the lawyer's client is implicated in the fraud, the lawyer should ordinarily first call upon the client to rectify the fraud. If the client is unwilling to do so, the lawyer should consider other remedial measures. The lawyer may not, however, disclose information otherwise protected by Rule 1.6, unless the client has used the lawyer's services to further a crime or fraud and disclosure is permitted by Rule 1.6(d). In other cases, the lawyer may learn of the client's intention to present false evidence before the client has had a chance to do so. In this situation, paragraphs (a)(4) and (b) forbid the lawyer to present the false evidence, except in rare instances where the witness is the accused in a criminal case, the lawyer is unsuccessful in dissuading the client from going forward, and the lawyer is unable to withdraw without causing serious harm to the client. In addition, Rule 1.6(c) may permit disclosure of client confidences and secrets when the lawyer learns of a prospective fraud on the tribunal involving, for example, bribery or intimidation of witnesses. The terms "criminal case" and "criminal defendant" as used in Rule 3.3 and its Comment include juvenile delinquency proceedings and the person who is the subject of such proceedings.

**Perjury by a Criminal Defendant**

[9] Paragraph (b) allows the lawyer to permit a client who is the accused in a criminal case to

present false testimony in very narrowly circumscribed circumstances and in a very limited manner. Even in a criminal case the lawyer must seek to persuade the defendant-client to refrain from perjurious testimony. There has been dispute concerning the lawyer's duty when that persuasion fails. Paragraph (b) requires the lawyer to withdraw rather than offer the client's false testimony, if this can be done without seriously harming the client.

[10] Serious harm to the client sufficient to prevent the lawyer's withdrawal entails more than the usual inconveniences that necessarily result from withdrawal, such as delay in concluding the client's case or an increase in the costs of concluding the case. The term should be construed narrowly to preclude withdrawal only where the special circumstances of the case are such that the client would be significantly prejudiced, such as by express or implied divulgence of information otherwise protected by Rule 1.6. If the confrontation with the client occurs before trial, the lawyer ordinarily can withdraw. Withdrawal before trial may not be possible, however, either because trial is imminent, or because the confrontation with the client does not take place until the trial itself, or because no other counsel is available. In those rare circumstances in which withdrawal without such serious harm to the client is impossible, the lawyer may go forward with examination of the client and closing argument subject to the limitations of paragraph (b).

### Refusing to Offer Proof of a Non-client Known to Be False

[11] Generally speaking, a lawyer may not offer testimony or other proof, through a non-client, that the lawyer knows to be false. Furthermore, a lawyer may not offer evidence of a client if the evidence is known by the lawyer to be false, except to the extent permitted by paragraph (b) where the client is a defendant in a criminal case.

### Duration of Obligation

[12] A practical time limit on the obligation to take reasonable remedial measures concerning criminal and fraudulent conducted related to the proceeding is needed. The conclusion of the proceeding is an appropriate and reasonably definite point for the termination of the obligation. A proceeding has concluded within the meaning of this rule when a final judgment in the proceeding has been affirmed on appeal or the time for review has passed. If the lawyer withdraws before the conclusion of the proceeding, the lawyer's obligation ends at the time of withdrawal.

### Withdrawal

[13] A lawyer's compliance with the duty of candor imposed by this rule might require that the lawyer withdraw from the representation of a client. The lawyer may, however, be required by Rule 1.16(a) to seek permission of the tribunal to withdraw if the lawyer's compliance with this rule's duty of candor, or with the requirements of Rule 1.6(c), results in the lawyer's inability to represent the client in accordance with these Rules. See also Rule 1.16(b) for the circumstances in which a lawyer will be permitted to seek a tribunal's permission to withdraw. In connection

with a request for permission to withdraw that is premised on a client's misconduct, a lawyer may reveal information relating to the representation only to the extent permitted by Rule 1.6.

Kurt Kanam

---------- Forwarded message ---------
From: kurt kanam <kurtkanam@gmail.com>
Date: Tue, Mar 25, 2025 at 4:35 PM
Subject: RPC 3.3 notice
To: <mary.gay.sprague@usdoj.gov>, <john.smeltzer@usdoj.gov>, <benton.peterson@usdoj.gov>

To the following list of United States Attorneys of record involved in the litigation in Kanam v. Haaland, Civ. A. Kanam v. Haaland, Civ. A. 1:22-cv-03183-RBW( D.D.C. 2022), in Kanam v. Haaland, Civ. A.No. 21-1690, 2022 WL 2315552 (D.D.C. June 28, 2022) and Kanam v. Haaland, No. 22-5197, 2023 WL 3063526 (D.C. Cir. Apr. 25, 2023). Those attorneys are:

Benton Gregory Peterson, Esquire, Assistant U.S. Attorney
Direct: 202-252-2534
Email: benton.peterson@usdoj.gov
Fax: 202-252-2599
[COR LD NTC Gvt US Attorney]
U.S. Attorney's Office
(USA) Civil Division
Firm: 202-252-2500
601 D Street, NW
Washington, DC 20530

John L. Smeltzer
Email: john.smeltzer@usdoj.gov
[COR LD NTC Gvt US DOJ]
U.S. Department of Justice
(DOJ) Environment and Natural Resources Division
Firm: 202-514-2000
PO Box 7415, Ben Franklin Station

Washington, DC 20044-7415

R. Craig Lawrence
Email: craig.lawrence@usdoj.gov
[COR NTC Gvt US Attorney]
U.S. Attorney's Office
(USA) Civil Division
Firm: 202-252-2500
601 D Street, NW
Washington, DC 20530

Mary Gabrielle Sprague, Esquire, Attorney
Email: mary.gay.sprague@usdoj.gov
[COR NTC Gvt US DOJ]
U.S. Department of Justice
(DOJ) Environment and Natural Resources Division
Firm: 202-514-2000
PO Box 7415, Ben Franklin Station
Washington, DC 20044-7415

This email addresses a misrepresentation to the District Court and Court of Appeals for the District of Columbia and the requirement under the Rules of Professional Conduct for the District of Columbia to correct a false statement of material fact.

In the cases above, Counsel for the Defendants have repeatedly argued in the briefing that there are only two avenues for federal tribal recognition. (Administratively under "Part 83"and through Congress. Moreover, the Attorneys have argued the "2015 DOI Guidelines" eliminated Judicial Branch tribal recognition.

The President has recently signed a memorandum confirming Judicial Branch recognition.

I have attached a copy of the memorandum. Per the attached Presidential memorandum and the Rules of Professional Conduct for the District of Columbia I am requesting that you file a motion to strike your motion to dismiss that has been filed in the District Court.

Per the attached Presidential memorandum and the Rules of Professional Conduct for the District of Columbia I am requesting that you instruct the Dept Of Interior to take action on the Pilchuck Nation petition for publication within 30 days.

Thank You

Kurt Kanam

360 956 3742

Supp.App-1.



MEMORANDUM FOR THE SECRETARY OF THE INTERIOR

SUBJECT: Federal Recognition of the Lumbee Tribe of North Carolina

Section 1. Purpose and Policy. The Lumbee Tribe of North Carolina, known as the People of the Dark Water, have a long and storied history. The tribe's members were descendants of several tribal nations from the Algonquian, Iroquoian, and Siouan language families, including the Hatteras, the Tuscarora, and the Cheraw. The waters of the Lumbee River and lands that surround it have protected and provided for the Lumbee people for centuries despite war, disease, and many other perils.

Supp.App-2

In 1885, the State of North Carolina recognized the Lumbee people as an Indian tribe. 1885 N.C. Sess. Laws 92. In 1956, President Dwight D. Eisenhower signed the Lumbee Act (Public Law 84-570, 70 Stat. 254), which recognized the Lumbee as the Lumbee Indians of North Carolina but denied Lumbee Indians Federal benefits associated with such recognition. Today, according to the State of North Carolina, the Lumbee Tribe consists of more than 55,000 members, making it the largest tribe east of the Mississippi River and the ninth-largest tribe in the Nation.

In 2024, the United States House of Representatives passed, by a vote of 311-96, the Lumbee Fairness Act (H.R. 1101), which would grant the Lumbee Tribe full Federal recognition, but this legislation was not considered by the United States Senate before the end of the 118th Congress. Similar legislation has passed the House of Representatives several times.

Considering the Lumbee Tribe's historical and modern significance, it is the policy of the United States to support the full Federal recognition, including the authority to receive full Federal benefits, of the Lumbee Tribe of North Carolina.

Supp.App-3

Sec. 2. Directive for Recognition Plan. (a) Within 90 days of the date of this memorandum, the Secretary of the Interior shall review all applicable authorities regarding the recognition or acknowledgement of Indian tribes and, in consultation with the leadership of the Lumbee Tribe of North Carolina, shall submit to the President a plan to assist the Lumbee Tribe in obtaining full Federal recognition through legislation or other available mechanisms, including the right to receive full Federal benefits.

(b) The plan shall include consideration and analysis of each potential legal pathway to effectuate full Federal recognition of the Lumbee Tribe, including through an act of the Congress, judicial action, or the Procedures for Federal Acknowledgement of Indian Tribes set forth in 25 C.F.R. Part 83.

(c) The Secretary of the Interior is authorized and directed to publish this memorandum in the Federal Register.

Supp.App-4



This document is scheduled to be published in the Federal Register on 02/12/2025 and available online at https://federalregister.gov/d/2025-02510, and on https://govinfo.gov    4337-15

DEPARTMENT OF THE INTERIOR Bureau of Indian Affairs [256A2100DD AAKP300000 A0A501010.000000]

Presidential Memorandum; Lumbee Tribe of North Carolina AGENCY: Bureau of Indian Affairs, Interior.

ACTION: Notice.

SUMMARY: This notice publishes the Presidential Memorandum titled "Federal Recognition of the Lumbee Tribe of North Carolina."

DATES: The Presidential memorandum was issued on January 23, 2025.

FOR FURTHER INFORMATION CONTACT: Oliver Whaley, Director, Office of Regulatory Affairs and Collaborative Action, Office of the Assistant Secretary—Indian Affairs, (202) 738-6065.

SUPPLEMENTARY INFORMATION: On January 23, 2025, the President of the United States issued a Presidential memorandum (PM) to the Secretary of the Interior (Secretary) titled "Federal Recognition of the Lumbee Tribe of North Carolina," which directs the Secretary to review "all applicable authorities regarding the recognition or acknowledgement of Indian tribes" and, in consultation with the leadership of the Lumbee Tribe of North Carolina, "submit to the President a plan to assist the Lumbee Tribe in obtaining full Federal recognition through legislation or other available mechanisms, including the right to receive full Federal benefits" within 90 days of the date of the PM. The PM further authorizes and directs the Secretary to publish the PM in the Federal Register .

Supp.App-5

Bryan Mercier,

Director, Bureau of Indian Affairs, Exercising the delegated authority of the Assistant Secretary—Indian Affairs.

Federal Recognition of the Lumbee Tribe of North Carolina January 23, 2025 Memorandum for the Secretary of the Interior Subject: Federal Recognition of the Lumbee Tribe of North Carolina Section 1. Purpose and Policy. The Lumbee Tribe of North Carolina, known as the People of the Dark Water, have a long and storied history. The tribe's members were descendants of several tribal nations from the Algonquian, Iroquoian, and Siouan language families, including the Hatteras, the Tuscarora, and the Cheraw. The waters of the Lumbee River and lands that surround it have protected and provided for the Lumbee people for centuries despite war, disease, and many other perils.

In 1885, the State of North Carolina recognized the Lumbee people as an Indian tribe. 1885 N.C. Sess. Laws 92. In 1956, President Dwight D. Eisenhower signed the Lumbee Act (Pub. L. 84-570, 70 Stat. 254), which recognized the Lumbee as the Lumbee Indians of North Carolina but denied the Lumbee Indians the Federal benefits associated with such recognition. Today, according to the State of North Carolina, the Lumbee Tribe consists of more than 55,000 members, making it the largest tribe east of the Mississippi River and the ninth-largest tribe in the Nation.

Federal Register / Vol. 90, No. 28 / Wednesday, February 12, 2025.                    9436

Supp.App-6

In 2024, the United States House of Representatives passed, by a vote of 311-96, the Lumbee Fairness Act (H.R. 1101), which would grant to the Lumbee Tribe full Federal recognition, but this legislation was not considered by the United States

Senate before the end of the 118th Congress. Similar legislation has passed the House of Representatives several times.

Considering the Lumbee Tribe's historical and modern significance, it is the policy of the United States to support the full Federal recognition, including the authority to receive full Federal benefits, of the Lumbee Tribe of North Carolina.

Sec. 2. Directive for Recognition Plan. (a) Within 90 days of the date of this memorandum, the Secretary of the Interior shall review all applicable authorities regarding the recognition or acknowledgement of Indian tribes and, in consultation with the leadership of the Lumbee Tribe of North Carolina, shall submit to the President a plan to assist the Lumbee Tribe in obtaining full Federal recognition through legislation or other available mechanisms, including the right to receive full Federal benefits.

(b) The plan shall include consideration and analysis of each potential legal pathway to effectuate the full Federal recognition of the Lumbee Tribe, including through an act of Congress, judicial action, or the Procedures for Federal Acknowledgement of Indian Tribes set forth in 25 CFR part 83.

(c) The Secretary of the Interior is authorized and directed to publish this memorandum in the Federal Register .


[FR Doc. 2025-02510 Filed 2-11-25; 8:45 am] BILLING CODE 4337-15-P

# ATTACHMENT 6



MEMORANDUM FOR THE SECRETARY OF THE INTERIOR

SUBJECT: Federal Recognition of the Lumbee Tribe of North Carolina

Section 1.  Purpose and Policy.  The Lumbee Tribe of North Carolina, known as the People of the Dark Water, have a long and storied history.  The tribe's members were descendants of several tribal nations from the Algonquian, Iroquoian, and Siouan language families, including the Hatteras, the Tuscarora, and the Cheraw.  The waters of the Lumbee River and lands that surround it have protected and provided for the Lumbee people for centuries despite war, disease, and many other perils.

In 1885, the State of North Carolina recognized the Lumbee people as an Indian tribe.  1885 N.C. Sess. Laws 92.  In 1956, President Dwight D. Eisenhower signed the Lumbee Act (Public Law 84-570, 70 Stat. 254), which recognized the Lumbee as the Lumbee Indians of North Carolina but denied Lumbee Indians Federal benefits associated with such recognition.  Today, according to the State of North Carolina, the Lumbee Tribe consists of more than 55,000 members, making it the largest tribe east of the Mississippi River and the ninth-largest tribe in the Nation.

In 2024, the United States House of Representatives passed, by a vote of 311-96, the Lumbee Fairness Act (H.R. 1101), which would grant the Lumbee Tribe full Federal recognition, but this legislation was not considered by the United States Senate before the end of the 118th Congress.  Similar legislation has passed the House of Representatives several times.

Considering the Lumbee Tribe's historical and modern significance, it is the policy of the United States to support the full Federal recognition, including the authority to receive full Federal benefits, of the Lumbee Tribe of North Carolina.

Sec. 2. Directive for Recognition Plan. (a) Within 90 days of the date of this memorandum, the Secretary of the Interior shall review all applicable authorities regarding the recognition or acknowledgement of Indian tribes and, in consultation with the leadership of the Lumbee Tribe of North Carolina, shall submit to the President a plan to assist the Lumbee Tribe in obtaining full Federal recognition through legislation or other available mechanisms, including the right to receive full Federal benefits.

(b) The plan shall include consideration and analysis of each potential legal pathway to effectuate full Federal recognition of the Lumbee Tribe, including through an act of the Congress, judicial action, or the Procedures for Federal Acknowledgement of Indian Tribes set forth in 25 C.F.R. Part 83.

(c) The Secretary of the Interior is authorized and directed to publish this memorandum in the Federal Register.



This document is scheduled to be published in the Federal Register on 02/12/2025 and available online at https://federalregister.gov/d/2025-02510, and on https://govinfo.gov    4337-15

DEPARTMENT OF THE INTERIOR Bureau of Indian Affairs [256A2100DD AAKP300000 A0A501010.000000]

Presidential Memorandum; Lumbee Tribe of North Carolina AGENCY: Bureau of Indian Affairs, Interior.

ACTION: Notice.

SUMMARY: This notice publishes the Presidential Memorandum titled "Federal Recognition of the Lumbee Tribe of North Carolina."

DATES: The Presidential memorandum was issued on January 23, 2025.

FOR FURTHER INFORMATION CONTACT: Oliver Whaley, Director, Office of Regulatory Affairs and Collaborative Action, Office of the Assistant Secretary— Indian Affairs, (202) 738-6065.

SUPPLEMENTARY INFORMATION: On January 23, 2025, the President of the United States issued a Presidential memorandum (PM) to the Secretary of the Interior (Secretary) titled "Federal Recognition of the Lumbee Tribe of North Carolina," which directs the Secretary to review "all applicable authorities regarding the recognition or acknowledgement of Indian tribes" and, in consultation with the leadership of the Lumbee Tribe of North Carolina, "submit to the President a plan to assist the Lumbee Tribe in obtaining full Federal recognition through legislation or other available mechanisms, including the right to receive full Federal benefits" within 90 days of the date of the PM. The PM further authorizes and directs the Secretary to publish the PM in the Federal Register .

Bryan Mercier,

Director, Bureau of Indian Affairs, Exercising the delegated authority of the Assistant Secretary—Indian Affairs.

Federal Recognition of the Lumbee Tribe of North Carolina January 23, 2025 Memorandum for the Secretary of the Interior Subject: Federal Recognition of the Lumbee Tribe of North Carolina Section 1. Purpose and Policy. The Lumbee Tribe of North Carolina, known as the People of the Dark Water, have a long and storied history. The tribe's members were descendants of several tribal nations from the Algonquian, Iroquoian, and Siouan language families, including the Hatteras, the Tuscarora, and the Cheraw. The waters of the Lumbee River and lands that surround it have protected and provided for the Lumbee people for centuries despite war, disease, and many other perils.

In 1885, the State of North Carolina recognized the Lumbee people as an Indian tribe. 1885 N.C. Sess. Laws 92. In 1956, President Dwight D. Eisenhower signed the Lumbee Act (Pub. L. 84-570, 70 Stat. 254), which recognized the Lumbee as the Lumbee Indians of North Carolina but denied the Lumbee Indians the Federal benefits associated with such recognition. Today, according to the State of North Carolina, the Lumbee Tribe consists of more than 55,000 members, making it the largest tribe east of the Mississippi River and the ninth-largest tribe in the Nation.

Federal Register / Vol. 90, No. 28 / Wednesday, February 12, 2025.                                                                                    9436

In 2024, the United States House of Representatives passed, by a vote of 311-96, the Lumbee Fairness Act (H.R. 1101), which would grant to the Lumbee Tribe full Federal recognition, but this legislation was not considered by the United States Senate before the end of the 118th Congress. Similar legislation has passed the House of Representatives several times.

Considering the Lumbee Tribe's historical and modern significance, it is the policy of the United States to support the full Federal recognition, including the authority to receive full Federal benefits, of the Lumbee Tribe of North Carolina.

Sec. 2. Directive for Recognition Plan. (a) Within 90 days of the date of this memorandum, the Secretary of the Interior shall review all applicable authorities regarding the recognition or acknowledgement of Indian tribes and, in consultation with the leadership of the Lumbee Tribe of North Carolina, shall submit to the President a plan to assist the Lumbee Tribe in obtaining full Federal recognition through legislation or other available mechanisms, including the right to receive full Federal benefits.

(b) The plan shall include consideration and analysis of each potential legal pathway to effectuate the full Federal recognition of the Lumbee Tribe, including through an act of Congress, judicial action, or the Procedures for Federal Acknowledgement of Indian Tribes set forth in 25 CFR part 83.

(c) The Secretary of the Interior is authorized and directed to publish this memorandum in the Federal Register .

[FR Doc. 2025-02510 Filed 2-11-25; 8:45 am] BILLING CODE 4337-15-P

# ATTACHMENT 7

Peterson, Benton (USADC)<benton.peterson@usdoj.gov>

To:You; kurt kanam

Tue 3/25/2025 8:08 AM

Thank you. The Presidential Memorandum does not change the law or the position of the agency. The defendant therefore opposes the proposed motion and requests that plaintiff refrain from filing a motion that would be frivolous.

# ATTACHMENT 8



PRESIDENT DONALD J. TRUMP          *The* WHITE HOUSE

↖ PRESIDENTIAL ACTIONS

## DIRECTING THE REPEAL OF UNLAWFUL REGULATIONS

Presidential Memoranda　｜　April 9, 2025

MEMORANDUM FOR THE HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES

SUBJECT: DIRECTING THE REPEAL OF UNLAWFUL REGULATIONS

Promoting economic growth and American innovation are top priorities of this Administration. Unlawful, unnecessary, and onerous regulations impede these objectives and impose massive costs on American consumers and American businesses. In recent years, the Supreme Court has issued a series of decisions that recognize appropriate constitutional boundaries on the power of unelected bureaucrats and that restore checks on unlawful agency actions. Yet, despite these critical course corrections, unlawful regulations — often promulgated in reliance on now-superseded Supreme Court decisions — remain on the books.

Consistent with these priorities and with my commitment to restore fidelity to the Constitution, on February 19, 2025, I issued Executive Order 14219 (Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative). It directed the heads of all executive departments and agencies to identify certain categories of unlawful and potentially unlawful regulations within 60 days and begin plans to repeal them. This review-and-repeal effort shall prioritize, in particular, evaluating each existing regulation's lawfulness under the following United States Supreme Court decisions:

1. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024);
2. *West Virginia v. EPA*, 597 U.S. 697 (2022);
3. *SEC v. Jarkesy*, 603 U.S. 109 (2024);
4. *Michigan v. EPA*, 576 U.S. 743 (2015);
5. *Sackett v. EPA*, 598 U.S. 651 (2023);
6. *Ohio v. EPA*, 603 U.S. 279 (2024);
7. *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021);
8. *Students for Fair Admissions v. Harvard*, 600 U.S. 181 (2023);
9. *Carson v. Makin*, 596 U.S. 767 (2022); and
10. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020).

In effectuating repeals of facially unlawful regulations, agency heads shall finalize rules without notice and comment, where doing so is consistent with the "good cause" exception in the Administrative Procedure Act. That exception allows agencies to dispense with notice-and-comment rulemaking when that process would be "impracticable, unnecessary, or contrary to the public interest." Retaining and enforcing facially unlawful regulations is clearly contrary to the public interest. Furthermore, notice-and-comment proceedings are "unnecessary" where repeal is required as a matter of law to ensure consistency with a ruling of the United States Supreme Court. Agencies thus have ample cause and the legal authority to immediately repeal unlawful regulations.

Accordingly, I hereby direct:

1. Following the 60-day review period ordered in Executive Order 14219 to identify unlawful and potentially unlawful regulations, agencies shall immediately take steps to effectuate the repeal of any regulation, or the portion of any regulation, that clearly exceeds the agency's statutory authority or is otherwise unlawful. Agencies should give priority to the regulations in conflict with the United States Supreme Court decisions listed earlier in this memorandum. The repeal of each unlawful regulation shall be accompanied by a brief statement of the reasons that the "good cause" exception applies.

2. Within 30 days of the conclusion of the review period directed in Executive Order 14219 to identify unlawful and potentially unlawful regulations, agencies shall submit to the Office of Information and Regulatory Affairs a one-page summary of each regulation that was initially identified as falling within one of the categories specified in section 2(a) of that Executive Order, but which has not been targeted for repeal, explaining the basis for the decision not to repeal that regulation.



DONALD J. TRUMP

Donald J. Trump (2nd Term), Memorandum on Directing the Repeal of Unlawful Regulations Online by Gerhard Peters and John T. Woolley, The American Presidency Project https://www.presidency.ucsb.edu/node/377019

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KURT KANAM, *et al.* | ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) | Civil Action No. 22-3183 (RBW) |
| DOUG BURGUM, Secretary, U.S. Department of the Interior, *et al.*, | ) ) ) ) | |
| *Defendants.* | ) ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60**

Plaintiffs Kurt Kanam ("Kanam") and the Pilchuck Nation (collectively, "Plaintiffs") seek to reopen this fully adjudicated and affirmed case based solely on a January 23, 2025, Presidential Memorandum (the "Memorandum") directing the U.S. Department of the Interior ("Interior") to explore "all applicable authorities regarding the recognition or acknowledgement of Indian tribes[,]" including an "analysis of potential legal pathways" to effectuate federal recognition, including "through an act of Congress, judicial action, or the Procedures for Federal Acknowledgement of Indian Tribes set forth in 25 CFR part 83." Federal Recognition of the Lumbee Tribe of North Carolina, 90 Fed. Reg. 9434 (February 12, 2025).

The Memorandum, however, is unrelated to Plaintiffs' case, does not create any legal duty to recognize Plaintiffs' tribe, and does not alter the statutory framework that governed this Court's dismissal and the D.C. Circuit's affirmance. The Court should deny the motion because Plaintiffs have failed to meet their burden under Federal Rules of Civil Procedure ("Rules") 60(b)(5) and (b)(6).

## BACKGROUND

### A. Plaintiffs' Complaint and its Dismissal.

On November 3, 2022, Plaintiffs filed a Petition for a Writ of Mandamus "to require the U.S. Department of the Interior to list the Pilchuck Nation as a federally recognized tribe." Pet. at 3-4. Plaintiffs' request for the Pilchuck Nation's inclusion on the List[1] of federally recognized tribes stemmed from the following allegation in Plaintiffs' Petition:

> Plaintiff Pilchuck Nation et al is a Treaty Tribe that occupies the status of a party to one or more of the Stevens[] treaties and therefore holds for the benefit of its members a reserved right to harvest anadromous fish at all the usual and accustomed places outside reservation boundaries, in common with others.

Pet. at 9, ¶ 14. In support of that allegation, Plaintiffs claimed that "[o]n March 22, 2012, the Karluk Tribal Court, through a Declaratory Order, declared Plaintiff Pilchuck Nation to be a Treaty Tribe." Pet. at 9, ¶ 15.

In their Petition, Plaintiffs set forth two causes of action. Plaintiffs alleged that Defendants violated (1) the List Act and (2) the Indian Reorganization Act by failing to include the Pilchuck Nation on the List of federally recognized Indian tribes. Pet. at 13, 16-19, ¶¶ 44-65. Plaintiffs requested that the Court "issue a writ of mandamus under this Court's authority directing [Defendants] to add the Pilchuck Nation of Washington to the list of federally-recognized tribes." Pet. at 19.

The Government moved to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and (b)(6) on June 2, 2023. ECF No. 10. The Court granted Government's Motion to Dismiss for lack of mandamus jurisdiction on March 21, 2024, reasoning that Plaintiffs "have not demonstrated

---

[1] The Secretary of the Interior annually publishes in the Federal Register "a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 5131; 25 C.F.R. § 83.6(a).

that their request is 'clearly mandated by statutory authority or case law,'" and therefore, have "failed to demonstrate 'a clear and indisputable right to the relief they request[.]'" ECF No. 18 at 4-5 (citations omitted).

### B. Plaintiffs' Appeal and the Affirmance of the Court's Judgment.

Unsuccessful, Plaintiffs filed an appeal with the United States Court of Appeals for the District of Columbia ("D.C. Circuit"). On appeal, Plaintiffs argued, in part, that Interior "misrepresented its 'policy guidance' for judiciary branch tribal recognition to the courts." ECF No. 26 at 2. On December 16, 2024, the D.C. Circuit affirmed this Court's judgment. ECF No. 29. Like this Court, the D.C. Circuit concluded that Plaintiffs "failed to demonstrate a 'clear and indisputable right to relief' because they could not show that their arguments were 'clearly mandated by statutory authority or case law.'" *Id.* at 1. Additionally, the D.C. Circuit explained that tribes seeking federal recognition "must pursue the Part 83 process." *Id.* at 2.

### C. Plaintiffs' Motion for Relief

On August 4, 2025, Plaintiffs filed a Motion for Relief from Judgment Pursuant to Rule 60—specifically under Rule 60(b)(5). *See* Motion for Relief from Judgment ("Relief Mtn."), ECF No. 31. In support, Plaintiffs cite a Memorandum dated January 23, 2025, which directs the Secretary of the Interior to review "all applicable authorities regarding the recognition or acknowledgement of Indian tribes" and, in consultation with the leadership of the Lumbee Tribe of North Carolina, "submit to the President a plan to assist the Lumbee Tribe in obtaining full Federal recognition through legislation or other available mechanisms . . . ." Recognition of the Lumbee Tribe, Sec. 2(a). The plan must include:

> consideration and *analysis of each potential legal* pathway to effectuate the full Federal recognition of the Lumbee Tribe, including through an act of Congress, judicial action, or the Procedures for Federal Acknowledgement of Indian Tribes set forth in 25 CFR part 83.

3

*Id.* at Sec. 2(b) (emphasis added). Plaintiff contends that the Memorandum "makes it clear . . . that judiciary branch recognition has always been a path for Federal [tribal] recognition." Relief Mtn. at 2.

**STANDARD OF REVIEW**

Rule 60(b) empowers a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding" on one of six enumerated grounds. Fed. R. Civ. P. 60(b). Plaintiffs request relief pursuant to Rule 60(b)(5).[2] *See* Relief Mtn. at 2. The relevant provisions of Rule 60 state:

> **Rule 60. Relief from a Judgment or Order**
>
> . . . .
>
> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> > (5) the judgment has been satisfied, release, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> > (6) any other reason that justifies relief.
>
> . . . .

Fed. R. Civ. P. 60(b)(5) – (6).

District Courts are "vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion." *Bain v. MJJ Prods.*, 751 F.3d 642, 646 (D.C. Cir. 2014) (citation omitted). "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *SEC v. Bilzerian*, 815 F.

---

[2] Although Plaintiffs purport to seek relief under Rule 60(b)(5), their motion does not satisfy the requirements of that provision as there has been no change in the law or vacated judgment affecting the original dismissal, as discussed below. To the extent Plaintiffs seek reconsideration based on alleged inequity or fairness concerns unrelated to a change in legal circumstances, their arguments are more appropriately considered, if at all, under Rule 60(b)(6). Accordingly, the Court may construe their motion as one brought under Rule 60(b)(6).

4

Supp. 2d 324, 327 (D.D.C. 2011) (quoting *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001)). Thus, relief under Rule 60(b) "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Mitchell v. Samuels*, 255 F. Supp. 3d 212, 214 (D.D.C. 2017) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208, 316 U.S. App. D.C. 152 (D.C. Cir. 1996)). The moving party "bears the burden of establishing that changed circumstances warrant relief." *Horne v. Flores*, 557 U.S. 433, 447, 129 S. Ct. 2579, 174 L. Ed. 2d 406 (2009).

Rule 60(b)(6) is a catch-all provision that empowers a court to grant relief from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "Relief under Rule 60(b)(6) requires extraordinary circumstances." *BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1619 (2025); *see also id.* at 1620 (collecting cases that repeatedly have reaffirmed Rule 60(b)(6)'s "extraordinary circumstances" standard). This standard presents a "high bar." *United States v. Philip Morris USA Inc.*, 840 F.3d 844, 852, 426 U.S. App. D.C. 269 (D.C. Cir. 2016).

## DISCUSSION

Plaintiffs have failed to meet their burden under Rules 60(b)(5) and (b)(6). For the reasons below, this Court should deny Plaintiffs' Motion for Relief.

### A. Plaintiffs fail to meet the burden set forth in Rule 60(b)(5).

"Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable.'" *Horne*, 557 U.S. at 447 (alteration in original). To obtain relief under Rule 60(b)(5), the party seeking relief "bears the burden of establishing that changed circumstances warrant relief." *Id.* (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992)). The United States Supreme Court has clarified that a change warranting relief means "a significant change

5

either in factual conditions or in law" that renders "continued enforcement detrimental to the public interest." *Id.* (citation and internal quotation marks omitted).

Plaintiff now argues that the Memorandum directing Interior to explore "all applicable authorities regarding the recognition or acknowledgement of Indian tribes[,]" including an "analysis of potential legal pathways" to effectuate Federal recognition of the Lumbee Tribe of North Carolina, including "through an act of Congress, judicial action, or the Procedures for Federal Acknowledgement of Indian Tribes set forth in 25 CFR part 83" demonstrates that "judiciary branch recognition has *always* been a path for Federal recognition." Relief Mtn. at 2 (emphasis added). Therefore, the Court's final judgment "is no longer equitable." *Id.* at 3.

Plaintiffs are wrong. As a preliminary matter, Plaintiffs advance seemingly inconsistent theories in support of their motion. On one hand, they assert that the Memorandum constitutes a "new development" justifying relief; on the other, they claim that it illustrates that "judiciary branch recognition has *always* been a viable path to Federal recognition." Relief Mtn. at 2. This inconsistency is fatal as, by definition, the latter cannot constitute changed circumstances. More importantly, these arguments are irreconcilable and have been expressly and repeatedly rejected by the D.C. Circuit in every iteration of this case.[3]

Assuming *arguendo* that a changed circumstance exists, Plaintiffs still fail to show that it is significant and renders enforcement of the Court's March 21, 2024, Order and the D.C. Circuit's December 16, 2024, affirmance detrimental to the public interest. The Court dismissed Plaintiffs' case because mandamus was unavailable absent a clear, nondiscretionary duty owed by the

---

[3]      *See* ECF No. 29; *see also* v *Kanam. Haaland*, Civ. A. No. 21-1690 (RJL), 2022 WL 2315552 (D.D.C. June 28, 2022), aff'd No. 22-5197, 2023 WL 3063526 (D.C. Cir. Apr. 25, 2023) (holding that tribes seeking recognition must pursue the Part 83 process, and that Plaintiffs failure to do so doomed their lawsuit).

6

Department of the Interior to Plaintiffs. *See* ECF No. 18 at 4-5 (citations omitted). The D.C. Circuit affirmed, holding that no such statutory duty existed. ECF No. 29.

The Memorandum does not—and could not—change that conclusion. First, the Memorandum expressly concerns exploration of recognition pathways for another tribe through available mechanisms. Second, it directs the Secretary to submit a plan, including "analysis of potential legal pathways" to assist the Lumbee Tribe in *obtaining* Federal recognition—not confer recognition. Third, and lastly, Memoranda are not judicial precedent and cannot amend statutes or regulations governing tribal recognition. *See generally, Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 347 ("[A] private right of action under federal law is not created by mere implication[.]").

At best, Plaintiffs may think (mistakenly) that the Memorandum supports their arguments; however, "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *Bilzerian*, 815 F. Supp. 2d at 327 (quoting *Jinks*, 250 F.3d at 385). That is, Plaintiffs already had the opportunity to present arguments related to judiciary branch recognition, and, indeed, Plaintiffs availed themselves of that opportunity.[4]

In sum, the Memorandum does not constitute changed circumstances warranting relief. Therefore, the Court should deny Plaintiffs' Motion for Relief pursuant to Rule 60(b)(5).

**B. Plaintiffs fail to meet the burden set forth in Rule 60(b)(6).**

The D.C. Circuit has "cautioned that Rule 60(b)(6) 'should be only sparingly used.'" *Id.* (quoting *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1140 (D.C. Cir. 1988). "[P]laintiffs must clear a very high bar to obtain relief under Rule 12(b)(6)," *Kramer v. Gates*, 481

---

[4]    *See id.*

F.3d 788, 792 (D.C. Cir. 2007), with relief available only in "extraordinary circumstances." *Buck v. Davis*, 580 U.S. 100, 123 (2017) (citation omitted).

Plaintiffs argue that the prior judgment should be vacated considering the Memorandum, yet they offer no legal authority—and no meaningful support—for the proposition that the Memorandum constitutes and intervening change in controlling law or renders the Court's prior decision inequitable. Nor have Plaintiffs identified any clear, non-discretionary statutory duty requiring the Department of the Interior to act. Rather, Plaintiff attempts to reiterate oft-rejected arguments under the guise of a Motion for Relief under Rule 60(b).

Even if the Court were to entertain Plaintiffs "new" argument, that argument is unavailing. It is well-settled that "extraordinary circumstances" warranting Rule 60(b)(6) relief "are not present . . . when there has been an intervening change in case law." *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (quotation marks omitted); *see also Agostini v. Felton*, 521 U.S. 203, 239 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)").

Further, Plaintiff equates this case to *Stillaguamish*, where the court remanded the case directing the Department of Interior to take specific action. *Stillaguamish Tribe of Indians v. Kleppe*, 1976 U.S. Dist. LEXIS 17381, *3. Plaintiff's reliance on *Stillaguamish*, however, is misplaced. There, the court found that defendants "unexplained failure" to process plaintiff's petition for Federal recognition for nearly two and one-half years was "arbitrary and capricious and an abuse of their discretion." *Id.* The circumstances in *Stillaguamish* bear no resemblance to those presented here.

Here, there is no evidence that Plaintiffs ever pursued the Part 83 acknowledgement process. Indeed, their prior claims were dismissed, in part, for failing to exhaust administrative

8

remedies available to them through the federal acknowledgement process. *See Kanam*, 2023 WL 3063526 (D.C. Cir.) ("It is undisputed that the Pilchuck Nation failed to ['pursue the Part 83 process'], which dooms this lawsuit." (quoting *Mackinac Tribe v. Jewell*, 829 F.3d 754, 757 (D.C. Cir. 2016)); *see e.g.*, *James v. Dep't of Health & Human Servs.*, 824 F.2d 1133, 1139 (D.C. Cir. 1987) (requiring exhaustion of administrative channels on the issue of tribal recognition prior to seeking judicial review). The circumstances in *Stillaguamish* bear no resemblance to those presented here.

Interior has promulgated regulations, now located at 25 C.F.R. Part 83 ("Part 83"), governing the administrative process through which entities can become federally acknowledged as Indian tribes. Multiple courts, including the D.C. Circuit, have upheld Interior's authority to acknowledge tribes through Part 83. *See, e.g.*, *James, supra*. Plaintiffs' convoluted disagreement with Department of the Interior's guidance requiring Plaintiffs to petition for federal acknowledgment through Part 83, and with the D.C. Circuit's binding precedent similarly requiring compliance with Part 83, have no relevance to Rule 60. Therefore, the Court should deny Plaintiffs' Motion for Relief under Rule 60(b)(6).

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' Motion for Relief. The Plaintiffs failed to: (1) demonstrate the Memorandum constitutes a changed circumstance that warrants relief; (2) identify a clear, nondiscretionary duty owed by the Department of the Interior to Plaintiffs; exhaust available administrative remedies under Part 83.

Dated: August 13, 2025  
Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO  
United States Attorney

9

By:  */s/ Saifuddin K. Kalolwala*
SAIFUDDIN K. KALOLWALA
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-2550
Saifuddin.Kalolwala@usdoj.gov

*Attorneys for the United States of America*

10